‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

**INSTR # 2005420338**

**O BK 15504 PG 0483**

**Pgs 0483 - 492; (10pgs)**

RECORDED 09/14/2005 04:19:25 PM
PAT FRANK CLERK OF COURT
HILLSBOROUGH COUNTY
DEPUTY CLERK Y Roche

When Recorded Mail to

Kathy E. Knapp
Reliance Trust Company
1100 Abernathy Road
500 Northpark, Suite 400
Atlanta, GA 30328-5646

This Instrument Prepared By:

Reliance Trust Company

BEST IMAGE(S)

Space above this line for Recorder's use

### AMENDMENT TO
### MORTGAGE,
### ASSIGNMENT OF RENTS AND SECURITY AGREEMENT
### FINANCING STATEMENT AND FIXTURE FILING

**For Value Received**, the undersigned hereby agree to the following amendment of the terms and conditions of that certain Mortgage, Assignment of Rents and Security Agreement Financing Statement and Fixture Filing dated July 14, 2005, entered into by **IGLESIA CRISTIANA LA NUEVA JERUSALEM, INC.**, a Florida non-profit corporation, Mortgagor/Grantor, naming **1st CENTENNIAL BANK**, a corporation, duly organized and existing under the laws of the State of California and **RELIANCE TRUST COMPANY**, as Trustee for First Mortgage Bondholders, a bank and trust company organized and existing under the laws of the State of Georgia as Lenders, recorded on August 5, 2005, in O BK 15334 PG 0601 Pgs 0601 – 619 (19 pgs), INSTR # 2005347617 of Official Records in the County Recorder's Office of Hillsborough County, State of Florida.

Regarding real property described as:      SEE ATTACHED EXHIBIT "A"

**Page No. 1, Second Paragraph:**

WHEREAS, Borrower is indebted to Lenders in the aggregate principal sum of FOUR MILLION SEVEN HUNDRED TWENTY THOUSAND AND NO/100 DOLLARS ($4,720,000), which indebtedness is evidenced by Borrower's $4,720,000 Promissory Note with 1st Centennial Bank dated August 5, 2005, providing for payments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on August 5, 2006, and evidenced by Borrower's Trust Indenture in the amount of $4,720,000 for the benefit of certain Bondholders of Series 2005 First Mortgage Bonds dated August 5, 2005, as defined in that certain Agreement Between Lienholders dated August 5, 2005, attached hereto as Exhibit "C" and incorporated herein by reference thereto.

**SHALL BE AMENDED TO READ AS FOLLOWS:**

WHEREAS, Borrower is indebted to Lenders in the aggregate principal sum of FOUR MILLION SEVEN HUNDRED TWENTY THOUSAND AND NO/100 DOLLARS ($4,720,000), which indebtedness is evidenced by Borrower's $4,720,000 Promissory Note with 1st Centennial Bank dated August 5, 2005, providing for payments of principal and interest, with the balance of the indebtedness, if not sooner paid,

10

**EXHIBIT**

C

tabbies

due and payable on August 5, 2006, and evidenced by Borrower's Trust Indenture in the amount of $4,720,000 for the benefit of certain Bondholders of Series 2005 First Mortgage Bonds dated August 5, 2005, as defined in that certain Agreement Between Lienholders dated August 3, 2005, attached hereto as Exhibit "C" and incorporated herein by reference thereto.

**Page No. 2, Second Paragraph:**

AND ALSO TO SECURE TO 1ST CENTENNIAL BANK (a) the repayment of the indebtedness evidenced by Borrower's Promissory Note dated August 5, 2005 in the principal sum of Four Million Seven Hundred Twenty Thousand Dollars ($4,720,000) between Borrower and 1st Centennial Bank providing for payments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on August 5, 2006 and all renewals, extensions and modifications thereof; (b) the payment of all other sums, but not limited to, the repayment of any Future Advances, with interest thereon, advanced in accordance herewith to protect the security of this Instrument; (c) the performance of the covenants and agreements of Borrower contained in the Loan Agreement; and (d) the performance of the covenants and agreements of Borrower herein contained, Borrower in consideration of the indebtedness herein recited and the trust herein created, irrevocably does hereby mortgage, grant, convey and assign to Lenders the properties located in Hillsborough County, State of Florida, and more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference.

**SHALL BE AMENDED TO READ AS FOLLOWS:**

AND ALSO TO SECURE TO 1ST CENTENNIAL BANK (a) the repayment of the indebtedness evidenced by Borrower's Promissory Note dated August 3, 2005 in the principal sum of Four Million Seven Hundred Twenty Thousand Dollars ($4,720,000) between Borrower and 1st Centennial Bank providing for payments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on August 5, 2006 and all renewals, extensions and modifications thereof; (b) the payment of all other sums, but not limited to, the repayment of any Future Advances, with interest thereon, advanced in accordance herewith to protect the security of this Instrument; (c) the performance of the covenants and agreements of Borrower contained in the Loan Agreement; and (d) the performance of the covenants and agreements of Borrower herein contained, Borrower in consideration of the indebtedness herein recited and the trust herein created, irrevocably does hereby mortgage, grant, convey and assign to Lenders the properties located in Hillsborough County, State of Florida, and more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference.

All other terms and conditions of said Mortgage, Assignment of Rents and Security Agreement, Financing Statement and Fixture Filing shall remain in full force and affect.

IN WITNESS WHEREOF, Borrower has executed this Instrument or has caused the same to be executed and sealed by its representatives thereunto duly authorized:

Signed, sealed and delivered in the presence of the following in Hillsborough County, Florida:

**BORROWER:**
IGLESIA CRISTIANA LA NUEVA
JERUSALEM, INC.
Tampa, Florida

WITNESS
Print Name: Lisa ONeal

BY: _____
ELVIN GONZALEZ
President

WITNESS
Print Name: Lisa ONeal

BY: _____
Victor Cruz
Vice President

WITNESS
Print Name: Lisa ONeal

BY: _____
RICHARD VALENTIN
Secretary

WITNESS
Print Name: Dayanara Valladares

BY: _____
REBECCA G. THORN
Director

(CORPORATE SEAL)

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

On Sept. 8, 2005 before me, Desiree D. Rodriguez Notary Public, personally appeared Elvin Gonzalez, President, Victor Cruz, Vice President, Richard Valentin, Secretary, and Rebecca G. Thorn, Director ( ) personally known to me - OR - (√) proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal, this the 8 day of September, 2005.

Desiree D. Rodriguez
Commission #DD455977
Expires: JULY 31, 2009
WWW.AARONNOTARY.com

_____
SIGNATURE OF NOTARY

My Commission Expires: July 31, 2009

## EXHIBIT A

Folio Numbers: 041088.0300, 041090.0000, 041137.0000
6850 Living Water Place, a/k/a 6616 East Chelsea Street, Tampa, Florida 33610

### Parcel 1:
(1 of 3 Pages)

Parcel A:

A Tract of land lying in the Northeast 1/4 of the Southeast 1/4 of Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida, more particularly described as follows:

Begin at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of stated Section 2; thence N. 00°05'56" W, (N.O.T. bearing) along the West boundary of stated Northeast 1/4 of the Southwest 1/4 of Section 2 a distance of 91.70 feet to a point on the North Right-of-way boundary of Chelsea Street Interchange to Interstate 4 (per Section 10190 - 2413 - 41 - 14) for a Point of Beginning. Thence continue N. 00°05'56" W, along the West boundary of the Northeast 1/4 of the Southwest 1/4 of stated Section 2 a distance of 360.70 feet; thence N. 81°13'34" E. a distance of 63.38 feet; thence N. 89°52'12" E. a distance of 138.34 feet; thence N. 00°05'56" W. a distance of 491.82 feet along a line 200.0 feet East of and parallel to the West boundary of the Northeast 1/4 of the Southwest 1/4 of stated Section 2 to a midsson corner; thence continue N. 00°05'56" W. into Bass Lake a distance of 15.38 feet; thence N. 74°19'23" E. a distance of 10.00 feet; thence N. 58°01'17" E. a distance of 102.62 feet; thence N. 53°25'37" E. a distance of 106.14 feet; thence N. 88°47'48" E. a distance of 156.19 feet; thence N. 47°23'47" E. a distance of 121.85 feet; thence N. 17°30'02" E. a distance of 76.63 feet; thence N. 53°13'25" E. a distance of 363.96 feet; thence N. 43°36'09" E. a distance of 334.37 feet; thence N. 50°44'58" E. a distance of 67.41 feet; thence N. 58°05'40" E. a distance of 197.21 feet to a point on the East boundary of the Northeast 1/4 of the Southeast 1/4 of stated Section 2; thence N. 00°02'37" W. along the stated East boundary of the Northeast 1/4 of the Southeast 1/4 of the Southwest 1/4 of Section 2 out of East Lake, a distance of 15.0 feet to a midsson corner; thence continue S. 00°01'37" W. along the stated East boundary of the Northeast 1/4 of the Southeast 1/4 of Section 2 a distance of 318.00 feet to a point on the Northwesterly right-of-way boundary of State land ACO (Interstate 4); thence S. 49°12'56" W. along stated Northwesterly right-of-way boundary of stated State land ACO distance of 1085.95 feet to a point on the North right-of-way boundary of stated Chelsea Street Interchange to Interstate 4; thence N. 89°52'12" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 437.45 feet; thence S. 81°13'34" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 66.90 feet to the Point of Beginning, containing 11.09 acres, more or less.

The following described portion of the above described land is hereby dedicated as an easement for ingress and egress to and from the lands abutting the following described land on the North: A tract of land lying in the Northeast 1/4 of the Southwest 1/4 of Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida, more particularly described as follows: Begin at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of stated Section 2, thence N. 00°05'56" W. (N.O.T. bearing) along the West boundary of stated Northeast 1/4 of the Southwest 1/4 of Section 2, a distance of 91.70 feet to a point on the North right-of-way line of Chelsea Street Interchange to Interstate 4 (per Section 10190-2413-41-14) for a Point of Beginning; thence continue N. 00°05'56" W. along the West boundary of the Northeast 1/4 of the Southeast 1/4 of Section 2, a distance of 60.70 feet; thence North 81°13'34" E. a distance of 63.38 feet; thence N. 89°52'48" E. a distance of 138.34 feet; thence N. 00°05'56" E. to a point on the North right-of-way boundary of Chelsea Interchange to Interstate 4; thence S. 89°53'12" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 138.41 feet; thence S. 81°13'34" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 66.90 feet to the POINT OF BEGINNING.

Book15504/Page486

**EXHIBIT A**

**Parcel 1:**
(1 of 3 Pages)

Parcel B:   That part of the West 330 feet of the Northwest 1/4 of the Southeast 1/4
lying Northwesterly of Right-of-way for Storm Road 600, lying and being
in Section 2, Township 29 North, Range 18 East, Hillsborough County, Florida..

Parcel C:   Tract A, less right-of-way for State Road 600 (Interstate 4) FAIRWAY ESTATES,
Unit No. 3, as per map or plat thereof as recorded in Plat Book 35, Page 64,
Public Records of Hillsborough County, Florida.

ALL OF THE ABOVE BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Commence at the Southwest corner of the Northeast 1/4 of the Southeast 1/4 of
Section 2, Township 29 South, Range 18 East, Hillsborough County, Florida; thence
N. 00°05'54" W., along the West line of said Northeast 1/4 of the Southeast
1/4, for 2.49 feet to a point on the centerline of Chelsea Street, as shown
on State Road 600 Right-of-way Map (Interstate 4) Section 10190-2413-41-14, Sheet 4;
thence continue N. 00°05'54" W, along said West line, for 29.67 feet to a
point on the North right-of-way line of said Chelsea Street as shown as said
Map; said point being the POINT OF BEGINNING; thence continue N. 00°05'54" W.,
along said West line, for 60.20 feet; thence N. 81°13'34" E. for 55.36 feet;
thence N. 89°52'13" E. for 138.36 feet to a point on a line being 200.00
feet East of and parallel to the West line of said Northeast 1/4 of the Southwest
1/4; thence N. 00°05'58" W., along said parallel line, for 450.37 feet to a
witness corner; thence continue N. 00°05'56" W., along said parallel line
extending into Long Lake, for 76.63 feet; thence N. 74°16'23" E. for 10.00
feet; thence S. 58°01'17" E. for 102.63 feet; thence S. 33°03'37" E. for 106.14
feet; thence S. 68°47'48" E. for 156.19 feet; thence S. 47°33'47" E. for
111.95 feet; thence N. 17°36'09" E. for 76.63 feet; thence N. 33°15'35" E. for
263.96 feet; thence S. 43°36'06" E. for 324.27 feet; thence N. 30°46'38" E.
for 67.41 feet; thence N. 88°05'48" E. for 187.41 feet to a point on the East
line of the Northeast 1/4 of the Southwest 1/4 of said Section 2; thence
N. 00°02'37" E. along said East line, for 187.66 feet to a point on the North
line of the Northwest 1/4 of the Southeast 1/4 of said Section 2; thence
S. 89°40'34" E. along said North line for 533.17 feet to a point on the
Northwesterly Limited Access right-of-way line of State Road 600 (Interstate
4); thence along said Limited Access right-of-way line the following three
(3) courses: 1) S. 37°48'36" W. for 116.00 feet; 2) thence run at East Line
S. 49°12'54" W. for 71.71 feet to a witness corner; 3) thence continue
S. 49°12'54" W. for 1830.67 feet to a point on the North right-of-way line
of Chelsea Street, as shown on said Right-of-way Map; thence along said North
right-of-way line the following two (2) courses:  1) S. 89°52'13" W. for 437.43
feet; 2) thence S. 81°13'34" W. for 66.60 feet to the POINT OF BEGINNING.

Together with the following described Parcel I:

A tract of land lying in the Southeast 1/4 of Section 2, Township 29 South
Range 18 East, Hillsborough County, Florida, more particularly described as follows:

Commence at the Southwest corner of the Northeast 1/4 of the Southeast 1/4 of
said Section 2; thence N 00°05'34" W (3.0.') bearing) along the West boundary of said
Northeast 1/4 of the Southwest 1/4 of Section 2, a distance of 91.70 feet to a point
on the Northerly right-of-way line of Chelsea Street Interchange to Interstate 4
( per Section 10190-2413-41-14) for a POINT OF BEGINNING; thence N 81°13'34" W along
said Northerly right-of-way line for 236.71 feet; thence leaving said Northerly
right-of-way line S 04°08'17" W for 60.00 feet; thence S 81°13'34" E for 241.02
feet to the West boundary of the Northeast 1/4 of the Southwest 1/4 of said Section 2;
thence along said West boundary N 00°05'34" E for 60.70 feet to the POINT OF BEGINNING

The above described parcel contains 14,233 square feet;

Said lands to be used for purposes of ingress and egress to Chelsea Street and
roadway purposes only.

EXHIBIT A

Parcel 1:
(3 of 3 Pages)

The above described lands are as recorded in O.R. Book 4216, Pg. 231 thru 233, (as to Parcel 1), O.R. Book 4440, Pg. 1994, (as to Parcel 3), O.R. Book 4378, Pg. 1972, (as to Parcel 5), O.R. Book 6366, Pg. 912, (as to Parcel 6).

Said lands above being more particularly described as follows:

A tract of land lying in Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida, more particularly described as follows :

Begin at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of said Section 2; thence S 00°25'36" W along the West boundary of said Northeast 1/4 of the Southwest 1/4 of Section 2 a distance of 91.70 feet to a point on the North right-of-way line of Chelsea Street Interchange to Interstate No. 4 for a POINT OF BEGINNING; run thence along said North right-of-way line S 81°13'34" W for a distance of 236.71 feet; thence N 04°08'13" W for a distance of 60.50 feet; thence N 81°13'34" E for a distance of 241.00 feet to a point on the West boundary of the Northeast 1/4 of the Southeast 1/4 of the aforesaid Section 2; thence continue S 81°13'34" E for a distance of 53.38 feet; thence S 00°32'12" E for a distance of 136.54 feet; thence N 00°05'56" E for a distance of 207.30 feet; thence S 74°19'23" E for a distance of 10.00 feet; thence S 38°01'17" E for a distance of 108.83 feet; thence S 53°03'37" E for a distance of 108.16 feet; thence S 88°47'14" E for a distance of 136.13 feet; thence N 47°53'47" E for a distance of 111.95 feet; thence N 17°30'03" E for a distance of 76.42 feet; thence N 33°15'15" E for a distance of 263.96 feet; thence N 45°36'08" E for a distance of 334.37 feet; thence N 90°44'58" E for a distance of 67.41 feet; thence S 00°05'48" E for a distance of 197.11 feet to a point on the Northwest 1/4 of the Southwest 1/4 of the aforesaid Section 2; thence N 00°32'12" W along said East boundary for a distance of 187.46 feet to a point on the North boundary of the Northeast 1/4 of the Southeast 1/4, Section 2; thence S 89°40'59" E along said North boundary for a distance of 532.27 feet to a point on the Northwesterly right-of-way line of Brnes Road Number 600 (Interstate 2-4); thence S 57°48'36" E for a distance of 116.00 feet; thence S 49°31'30" W for a distance of 1723.36 feet to a point on the North right-of-way line of Chelsea Street; thence S 80°33'12" W along said North right-of-way line for a distance of 437.45 feet; thence continue along said North right-of-way line S 81°13'34" W for a distance of 64.90 feet to the POINT OF BEGINNING.

Containing 15.765 acres, 686,744.11 Square Feet.

LESS AND EXCEPT ORDER OF TAKING RECORDED IN O.R. BOOK 8462, PAGE 1203, PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA, AS TO THE PROPERTY DESCRIBED ON THIS EXHIBIT A.

EXHIBIT A

Folio No. 066784.0000
3101 North Kingsway Road, Seffner, Florida 33584

Parcel 2: The South 150 feet of the East 315.40 feet of the North 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida.

and

Parcel 3: The South 170.00 feet of the West 240.00 feet of the East 555.4 feet of the North 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida.

and

Parcel 4: That part of the North 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida, being more particularly described as follows: For a point of reference, commence at the Northeast corner of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East; thence Westerly, along the North line of said Northwest 1/4 of Section 14, 745.73 feet; thence Southerly, 662.49 feet to a point on the South line of the North 1/4 of the Northwest 1/4 of said Section 14, said point being 745.18 feet Westerly of the Southeast corner of said North 1/4 of the Northwest 1/4 of Section 14 and the Point of Beginning; thence Northerly 150.00 feet; thence Easterly, 150.00 feet North of and parallel to the South boundary of said North 1/4, 189.78 feet; thence Southerly, 150.00 feet to a point on the aforementioned South boundary of the North 1/4, said point being Easterly 189.78 feet of the Point of Beginning; thence Westerly along the South boundary of the North 1/4 of the Northwest 1/4 of Section 14, 189.78 feet to the Point of Beginning.

and

Parcel 5: That part of the Northeast 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida, being more particularly described as follows:

For a point of reference, commence at the Northeast corner of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East; thence Westerly along the North line of said Northwest 1/4 of Section 14, 745.73 feet; thence Southerly 292.00 feet for a Point of Beginning; thence continue South 220.49 feet; thence East, 189.78 feet; thence North 20.00 feet, thence East 240.00 feet; thence South 20.00 feet; thence East 275.46 feet to the West right-of-way line of Kingsway Road; thence North along said West right-of-way line, 220.39 feet to a point lying 292.00 feet South of the North line of said Section 14; and thence West 705.59 feet to the Point of Beginning.

Less road rights-of-way as they presently exist (As to Parcels 2, 3, 4 and 5).

<u>**EXHIBIT C**</u>
<u>**AGREEMENT BETWEEN LIENHOLDERS**</u>

THIS AGREEMENT is made by and between **RELIANCE TRUST COMPANY**, a Georgia Bank and Trust Company, as Trustee for the benefit of the Bondholders of FIRST MORTGAGE BONDS, 2005 SERIES, having a notice address at 3384 Peachtree Road NE, Suite 900, Atlanta, Fulton County, Georgia 30326, 1ST **CENTENNIAL BANK**, a California corporation (hereinafter "**Lender**"), having a notice address at 10 Pointe Drive, Brea, California and **IGLESIA CRISTIANA LA NUEVA JERUSALEM, INC.**, a Florida non-profit religious corporation (hereinafter "**Issuer/Borrower**") whose address is 6616 East Chelsea Street, Tampa, Florida 33610.

RECITALS:

Borrower issued $4,720,000 First Mortgage Bonds, 2005 Series, dated August 5, 2005, (hereinafter referred to as the "**Bonds**") that provided funds to purchase real property, establish a reserve account for sinking fund payments, refinance existing debt, provide monies for the reimbursement of professional costs; and pay costs and fees related to the issuance of the Bonds, including broker fees, escrow/title closing costs, etc. The Bonds will be issued pursuant to a Trust Indenture dated as of August 5, 2005, naming Reliance Trust Company ("**Reliance**" and /or "**Trust Agent**") as Trustee, Disbursement Agent, Paying Agent and Registrar (the "**Indenture**"). Borrower intends to obtain a loan in the maximum amount of $4,720,000 from lender (the "**Loan**"). The proceeds of the Loan will be used by Borrower to purchase a maximum amount of $4,720,000 of the Bonds, in a private sale, which will be issued in the name of Borrower into its treasury and pledged to Lender to secure the Loan (the Bonds pledged to secure the Loan being referred to as the "**Pledged Bonds**"). California Plan of Church Finance, Inc. ("**Broker**") intends to resell the Pledged Bonds as the Borrower's agent in a public offering on a best-efforts basis. The proceeds from the resale of the Pledged Bonds will be used to repay the Loan. The Borrower has executed and delivered to Trust Agent and Lender a co-first Mortgage, Assignment of Rents and Security Agreement dated July 14, 2005 (the "**Mortgage**") on certain real property and improvements as described therein (the "**Property**") which will secure on an equal and parity basis both (i) the Bonds and other obligations under the Trust Indenture and (ii) the Loan. The Borrower has executed and delivered to Lender the Promissory Note dated August 3, 2005. As each of the Pledged Bonds is sold and the proceeds from the sale of each Pledged Bonds are paid to the Lender, Lender's security interest in each Pledged Bond will be released. Upon payment of the Loan from the resale of Pledged Bonds, Lender's interest under the Mortgage will be released. The Trust Agent and Lender have entered into the Agreement Between Lienholders setting forth their agreements with respect to default administration, application of proceeds and allocation of expenses.

NOW, THEREFORE, IN CONSIDERATION of the mutual covenants and agreements herein contained, Lender, Trustee and Issuer/Borrower do hereby agree as follows:

1.    Equity of Liens.  The parties do hereby agree that Issuer/Borrower shall execute the Mortgage and other collateral documents related thereto (the "**Security Documents**") as may be required by Lender or Reliance for the benefit of both Lender and Reliance and that such Security Documents shall jointly secure both the Note and the Bonds.  The Note and the Bonds shall both be secured by a first lien of equal position and parity and shall be governed by the provisions of the Security Documents, or other documents or instruments creating the same, as well as, the provisions of this Agreement as hereinafter set forth.

2.    Definition of Indebtedness.  For purposes of this Agreement, the term "**Indebtedness**" shall refer to both (i) the Note, and (ii) the Bonds.  The interest of Lender and Reliance in the Indebtedness shall vary as their respective interests therein may from time to time appear.

3.    Application of Payments.  The parties agree that the proceeds of the resale of the Pledged Bonds, to the extent received, will be used to pay the principal balance and accrued interest, to the extent received, of the Note.

4.    Procedures upon Default.  Notwithstanding any provisions to the contrary set forth or contained in (i) the Note, (ii) the Bonds, (iii) the Indenture, or (iv) the Security Documents or other security instrument or document securing the payment of the indebtedness, in the event of a default by Borrower under any of the terms and provisions of the instruments or legal documents described above, at the election of either Lender or Reliance all of the Indebtedness, both the Note and the Bonds, shall become immediately due and payable in full.  In the event of a default under either the Loan, the Bonds, or the Indenture, the party holding such defaulted obligation will give written notice to the other party within ten (10) days after learning of such event of default.  If either Reliance or Lender elects to accelerate the Bonds or the Loan as a result of any default, such party shall likewise give written notice to the other party of such election prior to taking any action thereon and, in such event, both Reliance and Lender agree to accelerate their respective portion of the Indebtedness on such election by the other.  In such event, all collection and foreclosure actions or proceedings shall be conducted jointly by Lender and Reliance.  All legal fees, court costs and related expenses and all receipts from collection and foreclosure hereunder shall be shared proportionately between Lender and Reliance in the same proportion that the unpaid principal balance of each party's portion of the Indebtedness bears to the unpaid principal balance of the total Indebtedness; provided that, if the parties retain separate legal counsel to assist in collection or foreclosure or if a party retains legal counsel in addition to jointly-obtained counsel, then the party retaining such separate or additional legal counsel shall pay the fees and expenses thereof.  In the event of a default under either portion of the Indebtedness, Reliance and Lender hereto agree to work together in good faith in attempting to make joint decisions regarding such matters as collection attempts, foreclosure, selection of counsel, and maintenance and disposition of the collateral.  In the event of receipt of proceeds from the collateral, any such proceeds shall be divided between Lender and Reliance based upon the unpaid principal balance of each party's

portion of the Indebtedness bears to the unpaid principal balance of the total Indebtedness.

5. Term. This Agreement shall continue until the earliest to occur of: (a) payment in full of the Note and release of Lender's interest in the Security Documents; (b) a repossession of the Property, or a final, nonappealable judgment has been entered foreclosing the Property, and the sale of the Property has been made and confirmed as required by law and the proceeds from such sale(s) disbursed to Lender and Reliance according to the terms hereof; or (c) the mutual written agreement of the parties to terminate this Agreement.

6. Enforcement. In any action brought to enforce or defend any of the provisions of this Agreement, the prevailing party or parties shall be entitled to recover its reasonable attorney's fees and expenses from any other party in addition to other relief awarded.

7. Construction. This Agreement does not make any party the employee, agent, partner or legal representative of any other party for any purpose whatsoever. No party is granted any right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of any other party.

8. Issuer/Borrower's Indemnity. Issuer/Borrower enters into this Agreement hereby agreeing to the arrangement between Lender and Reliance set forth herein in all respects. Furthermore, Issuer/Borrower does hereby agree to indemnify and hold harmless Reliance of and from any loss, expense, damages, costs, attorney's fees or other liability incurred as a result of this agreement and the transactions contemplated hereby, and does hereby release Reliance from any liability or duty to inquire as to the validity of the Note owing to Lender, the proper use of the proceeds of the Note or the adequacy of funding documentation.

9. Applicable Law. This Agreement is given under and shall in all respects be governed by the laws of the State of California with the exception that the laws of the Florida apply to the creation, attachment, perfection and collection upon the security interest in the Pledged Bonds.

10. Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be an original but all of which together shall constitute but one and the same instrument.