When Recorded Mail to *Randy K. Sterns, Esq.*
*Bush Ross, P.A.*
Kathy E. Knapp  *PO Box 3913*
Reliance Trust Company  *Tampa, FL*
1100 Abernathy Road  *33601-3913*
500 Northpark, Suite 400
Atlanta, GA 30328-5646

This Instrument Prepared By

Reliance Trust Company

INSTR # 2005347617
O BK 15334 PG 0601
Pgs 0601 - 619; (19pgs)
RECORDED 08/05/2005 01:08:39 PM
CLERK OF COURT
HILLSBOROUGH COUNTY
DOC TAX PD(F.S.201.08) 16,520.00
INT.TAX PD(F.S.199) 9,440.00
DEPUTY CLERK C DuVall

Space above this line for Recorder's use

## MORTGAGE,
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT
## FINANCING STATEMENT AND FIXTURE FILING

THIS MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT (herein "Instrument") is made this 14th day of July, 2005, by the Mortgagor/Grantor, IGLESIA CRISTIANA LA NUEVA JERUSALEM, INC., whose address is 6616 East Chelsea Street, Tampa, Florida 33610 (herein "Borrower"), 1ST CENTENNIAL BANK, a corporation, duly organized and existing under the laws of the State of California, whose address is 10 Pointe Drive, Brea, California 92821, and RELIANCE TRUST COMPANY, as Trustee for First Mortgage Bondholders, a bank and trust company organized and existing under the laws of the State of Georgia, whose address is 3384 Peachtree Road, Suite 900, Atlanta, Georgia 30326. 1st Centennial Bank and Reliance Trust Company are herein collectively referred to as the "Lenders."

WHEREAS, Borrower is indebted to Lenders in the aggregate principal sum of FOUR MILLION SEVEN HUNDRED TWENTY THOUSAND AND NO/100 DOLLARS ($4,720,000), which indebtedness is evidenced by Borrower's $4,720,000 Promissory Note with 1st Centennial Bank dated August 5, 2005, providing for payments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on August 5, 2006, and evidenced by Borrower's Trust Indenture in the amount of $4,720,000 for the benefit of certain Bondholders of Series 2005 First Mortgage Bonds dated August 5, 2005, as defined in that certain Agreement Between Lienholders dated August 5, 2005, attached hereto as Exhibit "C" and incorporated herein by reference thereto.

TO SECURE TO RELIANCE TRUST COMPANY, as Trustee for First Mortgage Bondholders, 2005 Series, (a) the repayment of the indebtedness evidenced by Borrower's bonds dated August 5, 2005, (herein "Bonds") in the principal sum of Four Million Seven Hundred Twenty Thousand Dollars ($4,720,000, with interest thereon, issued pursuant to a Trust Indenture (the "Trust Indenture") dated August 5, 2005 between Borrower as Issuer thereunder and Reliance Trust Company as Trustee thereunder, which Trust Indenture provides for payments by Issuer into a sinking fund maintained by Trustee's disbursement agent and/or paying agent for periodic payments to the holders of the Bonds of principal and interest on the Bonds, with the balance of the indebtedness, if not sooner paid, due and payable on August 5, 2035, and all renewals, extensions and modifications thereof; (b) the payment of all other sums including, but not limited to, the repayment of any future advances, with interest thereon, advanced in accordance herewith to protect the security of this Instrument (the "Future Advances"); (c) the performance of the covenants and agreements of Borrower contained in the Trust Indenture; and (d) the performance of the covenants and agreements of Borrower herein contained, Borrower in consideration of the indebtedness herein recited and the



EXHIBIT B

Book15334/Page601

trust herein created, irrevocably does hereby mortgage, grant, convey and assign to Lenders the properties located in Hillsborough County, State of Florida, and more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference.

AND ALSO TO SECURE TO 1ST CENTENNIAL BANK (a) the repayment of the indebtedness evidenced by Borrower's Promissory Note dated August 5, 2005 in the principal sum of Four Million Seven Hundred Twenty Thousand Dollars ($4,720,000) between Borrower and 1st Centennial Bank providing for payments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on August 5, 2006 and all renewals, extensions and modifications thereof; (b) the payment of all other sums, but not limited to, the repayment of any Future Advances, with interest thereon, advanced in accordance herewith to protect the security of this Instrument; (c) the performance of the covenants and agreements of Borrower contained in the Loan Agreement; and (d) the performance of the covenants and agreements of Borrower herein contained, Borrower in consideration of the indebtedness herein recited and the trust herein created, irrevocably does hereby mortgage, grant, convey and assign to Lenders the properties located in Hillsborough County, State of Florida, and more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference.

As to both lenders, together with all buildings, improvements, and tenements now or hereafter erected on the properties, and all heretofore or hereafter vacated alleys and streets abutting the properties, and all easements, rights, appurtenances, rents (subject, however, to the assignment of rents to Lenders herein), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the properties, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the properties, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pews, altars, organs, pictures, antennas, trees and plants; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real properties covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) now owned or hereafter acquired including but not limited to the property described on Exhibit "B" attached hereto and incorporated herein by this reference; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real properties covered by this Instrument, and all of the foregoing, together with said property are herein referred to as the "Property;" all interest of Borrower in (1) other tangible personal property of any nature whatsoever (a) located in or upon the real properties and (2) intangible personal property relating to the development, use or operation of the real properties including, but not limited to, all inventories, accounts, accounts receivable, contract rights, chattel paper, leases (subject, however, to the assignment of rents to Lenders herein), instruments, deposits, monies due and to become due (including guaranties and security for the payment of same) and all proceeds, benefits and claims arising as a result of loss in value of the properties or damage to any improvements therein or thereupon (including, but not limited to, insurance proceeds, awards for condemnation and causes of action against third persons or entities).

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and if this Instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in the Title Insurance Policy.

-2-

Covenant. Borrower and Lenders covenant and agree as follows

Definition "Loan Documents" means the Note, this Instrument, the Loan Agreement and the Hypothecation Agreement between the Borrower and 1st Centennial Bank all of even date herewith, the Agreement Between the Lien Holders among the Borrower and the Lenders of even date herewith, and any other documents now or in the future executed by Borrower or any other person in connection with the loan evidenced by the Note, and the Bonds and the Trust Indenture as such documents may be amended from time to time

Uniform Covenants. Borrower and Lenders covenant and agree as follows

1.  PAYMENT OF PRINCIPAL AND INTEREST Borrower shall promptly pay when due all obligations to the lenders as evidenced by the Loan Documents, including, but not limited to, the sinking fund payments as provided in the Trust Indenture, the principal of and interest on the indebtedness evidenced by the Bonds, any prepayment and late charges provided in the Trust Indenture and all other sums secured by this Instrument and or any of the remaining Loan Documents, including any renewals, extensions, advances under or modifications thereof

2.  TRUST INDENTURE Borrower shall comply with the covenants and conditions of the Trust Indenture which is hereby incorporated by this reference and made a part hereof

3.  CONDEMNATION. Borrower shall promptly notify Lenders of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lenders in writing Borrower authorizes Lenders, at Lenders' option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lenders' or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lenders subject, if this Instrument is on a leasehold to the rights of lessor under the ground lease. Borrower authorizes Lenders to apply such awards, payments, proceeds or damages, after the deduction of Lenders' expenses incurred in the collection of such amounts as provided in the Trust Indenture

4   BORROWER AND LIEN NOT RELEASED From time to time, Lenders may, at Lenders' option without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lenders' part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness of any part thereof reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Instrument any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Bonds or change the amount of the monthly installments payable thereunder Any actions taken by Lenders pursuant to the terms of this paragraph 4 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Instrument and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby and shall not affect the lien or priority of lien hereof on the Property Borrower shall pay Lenders a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lenders' option for any such action if taken at Borrower's request

-3-

5. **FORBEARANCE BY LENDERS NOT A WAIVER.** Any forbearance by Lenders in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any right or remedy. The acceptance by Lenders of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lenders' right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lenders shall not be a waiver of Lenders' right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lenders' receipt of any awards, proceeds or damages under paragraph 3 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

6. **ESTOPPEL CERTIFICATE.** Borrower shall, within ten days of a written request from Lenders, furnish Lenders with a written statement, duly acknowledged, setting forth the sums secured by this Instrument and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

7. **UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property, which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lenders a security interest in said items. Borrower agrees that Lenders may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lenders, upon Lenders' request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Instrument in such form as Lenders may request to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lenders may reasonably require. Without the prior written consent of Lenders, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lenders shall have the remedies of a secured party under the Uniform Commercial Code and at Lenders' option, may also invoke the remedies provided in paragraph 13 of this Instrument as to such items. In exercising any of said remedies, Lenders may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lenders' remedies under the Uniform Commercial Code or of the remedies provided in paragraph 13 of this Instrument.

8. **REMEDIES CUMULATIVE.** Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

9. **NOTICE.** Except for any notice required under applicable law to be given in another manner, all notices (including a statement of taxes assessed on real property), requests, demands, waivers, or other communications given as provided in this Instrument or in the Bonds will be in writing, and unless otherwise specifically provided in this Instrument, will be deemed to have been given: (i) if delivered in person, upon delivery, or (ii) if mailed by certified or registered mail, postage prepaid, and addressed to Borrower or Lender at the addresses provided below on the second business day after deposit in the United States mail if addressed to an address located within the same state in which the notice is being mailed or on the third business day after deposit in the United States mail if addressed to an address located within a state other than the state in which the notice is being mailed, or (iii) if sent by overnight express delivery service, enclosed in a prepaid envelope and addressed to Lender or Borrower at the

-4-

Book15334/Page604

addresses provided below, on the first business day after deposit with the service, or (iv) if sent by tested telex, telegram, telecopy, or other form of rapid transmission confirmed by mailing (as provided in this paragraph), at substantially the same time as the rapid transmission. Either Lender or Borrower may change its respective address as provided in this paragraph by giving written notice of the change as provided in this paragraph. The addresses for notice are

    (1)    NOTICE TO BORROWER.

        Iglesia Cristiana La Nueva Jerusalem, Inc.
        6616 East Chelsea Street
        Tampa, Florida 33610
        Attention: Elvin Gonzalez, President/Senior Pastor

    (2)    NOTICE TO LENDERS

        Reliance Trust Company, Trustee for First Mortgage Bondholders, 2005 Series
        1100 Abernathy Road
        500 Northpark, Suite 400
        Atlanta, GA 30328-5646
        Attention: Kathy Knapp, Vice President

        and

        1st Centennial Bank
        10 Pointe Drive
        Brea, California 92821
        Attn: Brian T. Day, Vice President

10.    SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lenders and Borrower. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lenders may act through its employees, agents or independent contractors as authorized by Lenders. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

11.    GOVERNING LAW; SEVERABILITY. This Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Instrument or the Bonds conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Bonds which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Bonds are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Instrument or in the Bonds, whether considered separately or together with other charges levied in connection with this Instrument and the Bonds, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lenders in excess of the amounts payable to Lenders pursuant to such charges as reduced shall be applied by Lenders to reduce the principal of the indebtedness evidenced by the Bonds. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Instrument or evidenced by the Bonds and which constitutes interest, as well as all other

-5-

charges levied in connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Bonds. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Bonds.

12. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDERS IN POSSESSION** As part of the consideration for the indebtedness evidenced by the Bonds, Borrower hereby absolutely and unconditionally assigns and transfers to Lenders all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lenders or Lenders' agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Property to pay such rents to Lenders or Lenders' agents, provided, however, that prior to written notice given by Lenders to Borrower for the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lenders and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in the Trust Indenture, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lenders that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lenders to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lenders entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Lenders shall immediately be entitled to possession of all rents and revenues of the Property as the same become due and payable, including, but not limited to, rents then due and unpaid, and all such rents shall immediately, upon delivery of such notice, be held by Borrower as trustee for the benefit of Lenders only; provided, however, that the written notice by Lenders to Borrower of the breach by Borrower shall contain a statement that Lenders exercise their rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lenders to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lenders, or Lenders' agents on Lenders' written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any acts or has not executed, and will not execute, any instrument which would prevent Lenders from exercising its rights under this paragraph 12, and that, at the time of execution of this Instrument, there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due dates of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will execute and deliver to Lenders such further assignments of rents and revenues of the Property as Lenders may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lenders may in person, by agent or by a court-appointed receiver, regardless of the adequacy of Lenders' security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lenders elect to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lenders or the receiver shall be entitled to

-6-

receive a reasonable fee for so managing the Property. Lenders may obtain the appointment of a receiver by a court of competent jurisdiction, upon ex parte application without notice to Borrower, such notice being hereby waived by Borrower, as a matter of right and without regard to the value of the collateral or the adequacy of any security for the sums secured by this Instrument.

All rents and revenues collected subsequent to delivery of written notice by Lenders to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property and then to the sums secured by this Instrument. Lenders or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lenders shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property by reason of anything done or left undone by Lenders under this paragraph 12.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lenders for such purposes shall become indebtedness of Borrower to Lenders secured by this Instrument. Unless Lenders and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lenders to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Bonds or the Trust Indenture, as may be applicable, unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lenders or the receiver and any application of rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lenders under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Instrument ceases to secure indebtedness held by Lenders.

**Non-Uniform Covenants** Borrower and Lenders further covenant and agree as follows:

13. ACCELERATION; REMEDIES. Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, or of any of the Loan Documents, including, but not limited to, the covenants to pay when due any sums secured by this Instrument, or of any of the Loan Documents, if such breach continues for a period of thirty (30) days, Lenders at Lenders' option may declare all of the sums secured by this Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law or provided herein. Lenders shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including, but not limited to, attorney's fees, litigation expenses, costs of documentary evidence, abstracts and title reports.

Borrower acknowledges that the power of sale herein granted may be exercised by Lenders without prior judicial hearing. If Lenders invoke the power of sale, Lenders or Trustee shall give to those legally entitled notice of sale as required by the laws of the jurisdiction in which the Property is located. Borrower has the right to bring an action to assert the non-existence of a breach or any other defense of Borrower to acceleration and sale. Lenders shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including, but not limited to, attorney's fees, costs of documentary evidence, abstracts and title reports. If lenders invoke the power of sale and it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such additional notices to Borrower and to other persons as applicable laws may require. After the lapse of such time as may be required by applicable law and after the

-7-

publication of the notice of sale, Trustee shall sell the Property according to applicable laws. Trustee may sell the Property at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale as may be required by applicable law. Lenders or Lenders' designee(s) may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's mortgage conveying the Property so sold without any covenant or warranty, expressed or implied, or with Special Warranty of title, at Trustee's discretion. The recitals in the Trustee's mortgage shall be prima facie evidence of the trust of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including, but not limited to, Trustee's and attorney's fees and costs of title evidence, (b) to all sums secured by this Instrument in such order as Lender, in Lender's sole discretion, directs; and (c) the excess, if any, to the person or persons legally entitled thereto.

14.  RECONVEYANCE. Upon payment of all sums secured by this Instrument, Lenders shall request Trustee to reconvey the Property and shall surrender and release the lien of this Instrument and all bonds evidencing indebtedness secured by this Instrument to Trustee. Trustee shall reconvey and release the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying and releasing the Property.

15.  SUBSTITUTE TRUSTEE. Lenders, at Lenders' option, may from time to time, by an instrument in writing, and in accordance with the laws of the jurisdiction in which the Property is located, appoint a successor trustee to any Trustee appointed hereunder, which instrument, when executed and acknowledged by conclusive proof of proper substitution of such successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title powers and duties conferred upon the Trustee herein and by applicable law. Said instrument shall contain the name of the original Lender(s), Trustee and Borrower hereunder, the book and page where this Instrument is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee who shall endorse receipt thereof upon such instrument of substitution. The procedure herein provided for substitution of trustee shall govern the exclusion of all other provisions for substitution, statutory or otherwise.

16.  REQUEST FOR NOTICES. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated herein.

17.  STATEMENT OF OBLIGATION. Lenders may collect a fee not to exceed the maximum allowed by applicable law for furnishing a statement of obligation. If no maximum is stated by applicable law, the fee for furnishing such statement shall be $100.00.

18.  FUTURE ADVANCES. Upon request of Borrower, Lenders, at Lenders' options so long as this Instrument secures indebtedness held by Lenders, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Instrument when evidenced by promissory notes/indentures stating that said notes/indentures are secured hereby.

19.  COUNTERPARTS. This Instrument may be simultaneously executed and delivered in counterpart each, as an original, shall constitute one and the same Instrument.

20.  CONFLICT. In the event of conflict between the terms, covenants and conditions of the Trust Indenture and this Instrument, the terms of this Instrument shall control.

-5-

21. **ATTORNEY'S FEES.** As used in this Instrument and in the Indenture and Promissory Note, "attorney's fees" shall include attorney's fees, if any, which may be awarded by a court of competent jurisdiction.

22. **LEGAL CAPACITY.** All parties signing the within instrument have declared themselves to be of full legal capacity.

23. **WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document, the Bonds or the Trust Indenture.

24. **WAIVER OF TRIAL BY JURY.** BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDERS THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OR RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

25. **DUE ON SALE PROVISION** IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF A BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT. LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS MORTGAGE TO THE EXTENT PERMITTED BY APPLICABLE LAW IF LENDER EXERCISES THE OPTION TO REQUIRE IMMEDIATE PAYMENT IN FULL, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN THIRTY (30) DAYS FROM THE DATE THE NOTICE IS FORWARDED WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS MORTGAGE. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THE PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS MORTGAGE AND APPLICABLE LAW

-9-

IN WITNESS WHEREOF, Borrower has executed this Instrument or has caused the same to be executed and sealed by its representatives thereunto duly authorized.

Signed, sealed and delivered in the presence of the following in Hillsborough County, Florida:

**BORROWER:**
IGLESIA CRISTIANA LA NUEVA
JERUSALEM, INC.
Tampa, Florida

WITNESS
Print Name: Micah O. Valladares

BY: ELVIN GONZALEZ
President

WITNESS
Print Name: Micah O. Valladares

BY: VICTOR CRUZ
Vice President

WITNESS
Print Name: Micah O. Valladares

BY: RICHARD VALENTIN
Secretary

WITNESS
Print Name: Micah O. Valladares

BY: REBECCA G. THORN
Director

(CORPORATE SEAL)

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

On July 19, 2005, before me, Randy K Sterns, Notary Public, personally appeared Elvin Gonzalez, President, Victor Cruz, Vice President, Richard Valentin, Secretary, and Rebecca G. Thorn, Director ( ) personally known to me - OR - (X) proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal, this the 19th day of July, 2005.

(NOTARIAL SEAL)

SIGNATURE OF NOTARY: Randy K Ster____
My Commission Expires: July 20, 2009

-10-

EXHIBIT A

Folio Numbers: 041088.0300, 041090.0000, 041137.0000
6850 Living Water Place, a/k/a 6616 East Chelsea Street, Tampa, Florida 33610

Parcel 1:
(1 of 3 Pages)

Parcel A:

A Tract of land lying in the Northeast 1/4 of the Southwest 1/4 of Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida, more particularly described as follows:

Begin at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of stated Section 2; thence N. 00°05'56" W. (D.O.T. bearing) along the West boundary of stated Northeast 1/4 of the Southwest 1/4 of Section 2 a distance of 91.70 feet to a point on the North Right-of-way boundary of Chelsea Street Interchange to Interstate 4 (per Section 10190 - 2413 - 41 - 14) for a Point of Beginning. Thence continue N. 00°05'56" W. along the West boundary of the Northeast 1/4 of the Southwest 1/4 of stated Section 2 a distance of 60.70 feet; thence N. 81°13'34" E. a distance of 63.38 feet; thence N. 89°52'12" E. a distance of 138.34 feet; thence N. 00°05'56" W. a distance of 41.82 feet along a line 200.0 feet East of and parallel to the West boundary of the Northeast 1/4 of the Southwest 1/4 of stated Section 2 to a witness corner; thence continue N. 00°05'56" W. into East Lake a distance of 15.38 feet; thence S. 74°19'22" E. a distance of 10.00 feet; thence S. 58°01'17" E. a distance of 102.43 feet; thence N. 52°00'37" E. a distance of 106.14 feet; thence S. 88°47'48" E. a distance of 156.10 feet; thence N. 47°53'47" E. a distance of 111.65 feet; thence N. 17°30'03" E. a distance of 74.62 feet; thence N. 33°15'25" E. a distance of 263.96 feet; thence N. 43°34'08" E. a distance of 324.27 feet; thence N. 50°44'58" E. a distance of 67.41 feet; thence N. 88°03'48" E. a distance of 197.31 feet to a point on the East boundary of the Northeast 1/4 of the Southwest 1/4 of stated Section 2; thence S. 00°02'27" W. along the stated East boundary of the Northeast 1/4 of the Southwest 1/4 of Section 2 out of East Lake, a distance of 15.0 feet to a witness corner; thence continue S. 00°02'27" W. along the stated East boundary of the Northeast 1/4 of the Southwest 1/4 of Section 2 a distance of 338.00 feet to a point on the Northwesterly right-of-way boundary of State Road 400 (Interstate 4); thence S. 49°12'56" W. along stated Northwesterly right-of-way boundary of stated State Road 400 a distance of 1083.95 feet to a point on the North right-of-way boundary of stated Chelsea Street Interchange to Interstate 4; thence N. 89°52'12" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 437.43 feet; thence S. 81°13'34" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 66.90 feet to the Point of Beginning, containing 12.09 acres, more or less.

The following described portion of the above described land is hereby dedicated as an easement for ingress and egress to and from the lands abutting the following described land on the North: A tract of land lying in the Northeast 1/4 of the Southwest 1/4 of Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida, more particularly described as follows: Begin at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of stated Section 2, thence N. 00°05'56" W. (D.O.T. bearing) along the West boundary of stated Northeast 1/4 of the Southwest 1/4 of Section 2, a distance of 91.70 feet to a point on the North right-of-way line of Chelsea Street Interchange to Interstate 4 (per Section 10190-2413-41-14) for a Point of Beginning, thence continue N. 00°05'56" W. along the West boundary of the Northeast 1/4 of the Southwest 1/4 of Section 2, a distance of 10.70 feet; thence North 81°13'34" E. a distance of 63.38 feet; thence N. 89°52'12" E. a distance of 138.34 feet; thence S. 00°05'56" E. a distance of 10 feet to a point on the North right-of-way boundary of Chelsea Interchange to Interstate 4; thence N. 89°52'12" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 135.91 feet; thence S. 81°13'34" W. along stated North right-of-way boundary of Chelsea Street Interchange a distance of 66.90 feet to the POINT OF BEGINNING.

Book15334/Page611

EXHIBIT A
Parcel 1:
(2 of 3 Pages)

Parcel B: That part of the West 330 feet of the Northwest 1/4 of the Southeast 1/4 lying Northwesterly of Right-of-way for State Road 400, lying and being in Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida.

Parcel C: Tract A, less right-of-way for State Road 400 (Interstate 4) PARDEAN SHORES, Unit No. 3, as per map or plat thereof as recorded in Plat Book 35, Page 64, Public Records of Hillsborough County, Florida.

ALL OF THE ABOVE BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Commence at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida; thence N. 00°05'56" W., along the West line of said Northeast 1/4 of the Southwest 1/4, for 2.66 feet to a point on the centerline of Chelsea Street, as shown on State Road 400 Right-of-way Map (Interstate 4), Section 10190-2413-41-14, Sheet 4; thence continue N. 00°05'56" W. along said West line, for 89.67 feet to a point on the North right-of-way line of said Chelsea Street as shown on said Map, said point being the POINT OF BEGINNING; thence continue N. 00°05'56" W., along said West line, for 60.70 feet; thence N. 81°13'34" E. for 62.38 feet; thence S. 89°52'12" E. for 138.34 feet to a point on a line being 300.00 feet East of and parallel to the West line of said Northeast 1/4 of the Southwest 1/4; thence N. 00°05'56" W., along said parallel line, for 430.57 feet to a witness corner; thence continue N. 00°05'56" W., along said parallel line extending into East Lake, for 76.63 feet; thence S. 74°19'32" E. for 10.00 feet; thence S. 58°01'17" E. for 102.61 feet; thence S. 51°03'37" E. for 106.14 feet; thence S. 66°47'46" E. for 156.19 feet; thence N. 47°33'47" E. for 111.95 feet; thence N. 17°30'03" E. for 76.63 feet; thence N. 53°13'25" E. for 263.96 feet; thence N. 43°36'06" E. for 324.27 feet; thence N. 50°44'58" E. for 67.41 feet; thence S. 86°05'48" E. for 197.43 feet to a point on the East line of the Northeast 1/4 of the Southwest 1/4 of said Section 2; thence N. 00°02'27" E. along said East line, for 187.44 feet to a point on the North line of the Northeast 1/4 of the Southwest 1/4 of said Section 2; thence S. 89°40'34" E. along said North line for 551.27 feet to a point on the Northwesterly Limited Access right-of-way line of State Road 400 (Interstate 4); thence along said Limited Access right-of-way line the following three (3) courses: 1) S. 37°48'56" W. for 116.00 feet; 2) thence out of East Lake S. 49°13'34" W. for 71.71 feet to a witness corner; 3) thence continue S. 49°12'34" W. for 1650.87 feet to a point on the North right-of-way line of Chelsea Street, as shown on said Right-of-way Map; thence along said North right-of-way line the following two (2) courses: 1) N. 89°52'12" W. for 437.45 feet; 2) thence S. 81°13'34" W. for 66.90 feet to the POINT OF BEGINNING.

Together with the following described Parcel 4:

A tract of land lying in the Southwest 1/4 of Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida, more particularly described as follows:

Commence at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of said Section 2; thence N 00°05'56" W (P.O.T. Bearing) along the West boundary of said Northeast 1/4 of the Southwest 1/4 of Section 2, a distance of 91.70 feet to a point on the Northerly right-of-way line of Chelsea Street Interchange to Interstate 4 (per Section 10190-2413-41-14) for a POINT OF BEGINNING; thence S 81°13'34" W along said NOrtherly right-of-way line for 236.71 feet; thence leaving said Northerly right-of-way line N 04°08'13" W for 60.20 feet; thence N 81°13'34" E for 241.00 feet to the West boundary of the Northeast 1/4 of the Southwest 1/4 of said Section 2; thence along said West boundary S 00°05'56" E for 60.70 feet to the POINT OF BEGINNING.

The above described parcel contains 14,133 square feet;

Said lands to be used for purposes of ingress and egress to Chelsea Street and roadway purposes only.

EXHIBIT A

Parcel 1:
(3 of 3 Pages)

The above described lands are as recorded in O.R. Book 4216, Pg.231 thru 233, (as to Parcel 1), O.R.Book 4640, Pg. 1906, (as to Parcel 3), O.R.Book 4370, Pg. 1972, (as to Parcel 3), O.R.Book 6364, Pg. 912, (as to Parcel 4).

Said lands above being more particularly described as follows:

A Tract of land lying in Section 2, Township 29 South, Range 19 East, Hillsborough County, Florida, more particularly described as follows ;

Begin at the Southwest corner of the Northeast 1/4 of the Southwest 1/4 of said Section 2; thence N 00°05'36" W along the West boundary of said Northeast 1/4 of the Southwest 1/4 of Section 2 a distance of 93.70 feet to a point on the North right-of-way line of Chelsea Street Interchange to Interstate No. 4 for a POINT OF BEGINNING; run thence along said North right-of-way line N 81°13'34" W for a distance of 236.71 feet; thence S 04°06'13" W for a distance of 60.30 feet; thence N 81°13'34" E for a distance of 241.00 feet to a point on the West boundary of the Northeast 1/4 of the Southwest 1/4 of the aforesaid Section 2; thence continue N 81°13'34" E for a distance of 62.30 feet; thence S 09°53'12" E for a distance of 136.34 feet; thence N 00°05'36" W for a distance of 507.30 feet; thence S 74°19'22" E for a distance of 10.00 feet; thence S 58°01'17" E for a distance of 101.63 feet; thence S 52°03'37" E for a distance of 106.16 feet; thence S 88°47'46" E for a distance of 136.13 feet; thence N 47°53'47" E for a distance of 111.95 feet; thence N 17°30'03" E for a distance of 76.62 feet; thence N 53°15'13" E for a distance of 263.96 feet; thence N 43°36'06" E for a distance of 324.17 feet; thence N 50°44'30" E for a distance of 67.41 feet; thence N 38°05'48" E for a distance of 197.21 feet to a point on the Northeast 1/4 of the Southwest 1/4 of the aforesaid Section 2; thence N 00°02'27" E along said East boundary for a distance of 187.46 feet to a point on the North boundary of the Northwest 1/4 of the Southeast 1/4, Section 2; thence S 88°40'36" E along said North boundary for a distance of 532.27 feet to a point on the Northwesterly right-of-way line of State Road Number 400 (Interstate I-4); thence S 37°48'56" W for a distance of 116.00 feet; thence N 49°12'36" W for a distance of 1723.34 feet to a point on the North right-of-way line of Chelsea Street; thence N 09°53'12" W along said North right-of-way line for a distance of 437.45 feet; thence continue along said North right-of-way line S 81°13'34" W for a distance of 66.90 feet to the POINT OF BEGINNING.

Containing 15.765 acres, 686,744.11 Square Feet.

LESS AND EXCEPT ORDER OF TAKING RECORDED IN O.R. BOOK 8462, PAGE 1203, PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA, AS TO THE PROPERTY DESCRIBED ON THIS EXHIBIT A.

## EXHIBIT A

Folio No. 066784.0000
3101 North Kingsway Road, Seffner, Florida 33584

<u>Parcel 2</u>: The South 150 feet of the East 315.40 feet of the North 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida.

and

<u>Parcel 3</u>: The South 170.00 feet of the West 240.00 feet of the East 555.4 feet of the North 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida.

and

<u>Parcel 4</u>: That part of the North 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida, being more particularly described as follows: For a point of reference, commence at the Northeast corner of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East; thence Westerly, along the North line of said Northwest 1/4 of Section 14, 745.73 feet; thence Southerly, 662.49 feet to a point on the South line of the North 1/4 of the Northwest 1/4 of said Section 14, said point being 745.18 feet Westerly of the Southeast corner of said North 1/4 of the Northwest 1/4 of Section 14 and the Point of Beginning; thence Northerly 150.00 feet; thence Easterly, 150.00 feet North of and parallel to the South boundary of said North 1/4, 189.78 feet; thence Southerly, 150.00 feet to a point on the aforementioned South boundary of the North 1/4, said point being Easterly 189.78 feet of the Point of Beginning; thence Westerly along the South boundary of the North 1/4 of the Northwest 1/4 of Section 14, 189.78 feet to the Point of Beginning.

and

<u>Parcel 5</u>: That part of the Northeast 1/4 of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East, Hillsborough County, Florida, being more particularly described as follows:

For a point of reference, commence at the Northeast corner of the Northwest 1/4 of Section 14, Township 29 South, Range 20 East; thence Westerly along the North line of said Northwest 1/4 of Section 14, 745.73 feet; thence Southerly 292.00 feet for a Point of Beginning, thence continue South 220.49 feet; thence East, 189.78 feet; thence North 20.00 feet, thence East 240.00 feet; thence South 20.00 feet; thence East 275.46 feet to the West right-of-way line of Kingsway Road; thence North along said West right-of-way line, 220.39 feet to a point lying 292.00 feet South of the North line of said Section 14; and thence West 705.59 feet to the Point of Beginning.

Less road rights-of-way as they presently exist (As to Parcels 2, 3, 4 and 5).

## EXHIBIT "B"

| DEBTOR: | SECURED PARTY: |
|---|---|
| IGLESIA CRISTIANA LA NUEVA JERUSALEM, INC.<br>A Florida Non-Profit Religious Corporation<br>6616 E. Chelsea Street<br>Tampa, Florida 33610 | RELIANCE TRUST COMPANY<br>A Georgia Bank and Trust Company<br>3384 Peachtree Rd., NE Suite 900<br>Atlanta, GA 30326<br><br>1st CENTENNIAL BANK<br>A California Corporation<br>10 Pointe Drive<br>Brea, California 92821 |

(a) All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all fixtures, machinery, equipment, building materials, appliances and goods of every nature now or hereafter located on or upon, or intended to be used in connection with, the Land or the improvements thereon, including, but not by way of limitation, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, and all elevators and related machinery and equipment, all plumbing; and all personal property and fixtures of every kind and character now or at any time hereafter located in or upon the Land or the improvements thereon, or which may now or hereafter be used or obtained in connection therewith, including, without limitation, fixtures, machinery, equipment, appliances, vehicles (excluding Debtor's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land or any improvements thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Debtor in any such fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Debtor or on behalf of Debtor, all trade names, trademarks, service marks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land or any improvements thereon or any part thereof or are now or hereafter acquired by Debtor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described herein, and all other interests of every kind and character in all of the real, personal, intangible and mixed properties described herein which Debtor may now own or at any time hereafter acquire, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Land as between the parties hereto and all persons claiming by, through or under them.

(b) All of the interest of Debtor in all easements, rights-of-way, licenses, operating agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, oil and gas and other minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Debtor.

Exhibit B-fixture filing

(c) All income (including but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents, issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies, proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, overriding royalties, rents, delay rents, operating interests, participating interests and other such entitlements, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed And Agreement executed by Debtor in favor of Secured Party

(d) All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans, and specifications relating to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect, and (iii) any agreements entered into with contractors, suppliers, materialmen or laborers with respect to construction of improvements on the Land

(e) If applicable, any and all management contracts, agreements, or other correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby

(f) Together with any and all additional items of personal property, furnishings, fixtures, equipment, furniture, trade fixtures, and other items of property not heretofore referenced above including any and all musical instruments, church pews, chairs, pulpits, podiums, and all other items used in connection with the Issuer and Issuer's functions.

Exhibit B-fixture filing

EXHIBIT "C"

## AGREEMENT BETWEEN LIENHOLDERS

THIS AGREEMENT is made by and between **RELIANCE TRUST COMPANY**, a Georgia Bank and Trust Company, as Trustee for the benefit of the Bondholders of FIRST MORTGAGE BONDS, 2005 SERIES, having a notice address at 3384 Peachtree Road NE, Suite 900, Atlanta, Fulton County, Georgia 30326, 1ST **CENTENNIAL BANK**, a California corporation (hereinafter "**Lender**"), having a notice address at 10 Pointe Drive, Brea, California and **IGLESIA CRISTIANA LA NUEVA JERUSALEM, INC.**, a Florida non-profit religious corporation (hereinafter "**Issuer/Borrower**") whose address is 6616 East Chelsea Street, Tampa, Florida 33610.

### RECITALS:

Borrower issued $4,720,000 First Mortgage Bonds, 2005 Series, dated August 5, 2005, (hereinafter referred to as the "**Bonds**") that provided funds to purchase real property, establish a reserve account for sinking fund payments, refinance existing debt, provide monies for the reimbursement of professional costs; and pay costs and fees related to the issuance of the Bonds, including broker fees, escrow/title closing costs, etc. The Bonds will be issued pursuant to a Trust Indenture dated as of August 5, 2005, naming Reliance Trust Company ("**Reliance**" and /or "**Trust Agent**") as Trustee, Disbursement Agent, Paying Agent and Registrar (the "**Indenture**"). Borrower intends to obtain a loan in the maximum amount of $4,720,000 from lender (the "**Loan**"). The proceeds of the Loan will be used by Borrower to purchase a maximum amount of $4,720,000 of the Bonds, in a private sale, which will be issued in the name of Borrower into its treasury and pledged to Lender to secure the Loan (the Bonds pledged to secure the Loan being referred to as the "**Pledged Bonds**"). California Plan of Church Finance, Inc. ("**Broker**") intends to resell the Pledged Bonds as the Borrower's agent in a public offering on a best-efforts basis. The proceeds from the resale of the Pledged Bonds will be used to repay the Loan. The Borrower has executed and delivered to Trust Agent and Lender a co-first Mortgage, Assignment of Rents and Security Agreement dated July 14, 2005 (the "**Mortgage**") on certain real property and improvements as described therein (the "**Property**") which will secure on an equal and parity basis both (i) the Bonds and other obligations under the Trust Indenture and (ii) the Loan. The Borrower has executed and delivered to Lender the Promissory Note dated August 5, 2005. As each of the Pledged Bonds is sold and the proceeds from the sale of each Pledged Bonds are paid to the Lender, Lender's security interest in each Pledged Bond will be released. Upon payment of the Loan from the resale of Pledged Bonds, Lender's interest under the Mortgage will be released. The Trust Agent and Lender have entered into the Agreement Between Lienholders setting forth their agreements with respect to default administration, application of proceeds and allocation of expenses.

NOW, THEREFORE, IN CONSIDERATION of the mutual covenants and agreements herein contained, Lender, Trustee and Issuer/Borrower do hereby agree as follows:

Book15334/Page617

1. **Equity of Liens.** The parties do hereby agree that Issuer/Borrower shall execute the Mortgage and other collateral documents related thereto (the "**Security Documents**") as may be required by Lender or Reliance for the benefit of both Lender and Reliance and that such Security Documents shall jointly secure both the Note and the Bonds. The Note and the Bonds shall both be secured by a first lien of equal position and parity and shall be governed by the provisions of the Security Documents, or other documents or instruments creating the same, as well as, the provisions of this Agreement as hereinafter set forth.

2. **Definition of Indebtedness.** For purposes of this Agreement, the term "**Indebtedness**" shall refer to both (i) the Note, and (ii) the Bonds. The interest of Lender and Reliance in the Indebtedness shall vary as their respective interests therein may from time to time appear.

3. **Application of Payments.** The parties agree that the proceeds of the resale of the Pledged Bonds, to the extent received, will be used to pay the principal balance and accrued interest, to the extent received, of the Note.

4. **Procedures upon Default.** Notwithstanding any provisions to the contrary set forth or contained in (i) the Note, (ii) the Bonds, (iii) the Indenture, or (iv) the Security Documents or other security instrument or document securing the payment of the indebtedness, in the event of a default by Borrower under any of the terms and provisions of the instruments or legal documents described above, at the election of either Lender or Reliance all of the Indebtedness, both the Note and the Bonds, shall become immediately due and payable in full. In the event of a default under either the Loan, the Bonds, or the Indenture, the party holding such defaulted obligation will give written notice to the other party within ten (10) days after learning of such event of default. If either Reliance or Lender elects to accelerate the Bonds or the Loan as a result of any default, such party shall likewise give written notice to the other party of such election prior to taking any action thereon and, in such event, both Reliance and Lender agree to accelerate their respective portion of the Indebtedness on such election by the other. In such event, all collection and foreclosure actions or proceedings shall be conducted jointly by Lender and Reliance. All legal fees, court costs and related expenses and all receipts from collection and foreclosure hereunder shall be shared proportionately between Lender and Reliance in the same proportion that the unpaid principal balance of each party's portion of the Indebtedness bears to the unpaid principal balance of the total Indebtedness; provided that, if the parties retain separate legal counsel to assist in collection or foreclosure or if a party retains legal counsel in addition to jointly-obtained counsel, then the party retaining such separate or additional legal counsel shall pay the fees and expenses thereof. In the event of a default under either portion of the Indebtedness, Reliance and Lender hereto agree to work together in good faith in attempting to make joint decisions regarding such matters, as collection attempts, foreclosure, selection of counsel, and maintenance and disposition of the collateral. In the event of receipt of proceeds from the collateral, any such proceeds shall be divided between Lender and Reliance based upon the unpaid principal balance of each party's

2

portion of the Indebtedness bears to the unpaid principal balance of the total Indebtedness.

5. Term. This Agreement shall continue until the earliest to occur of: (a) payment in full of the Note and release of Lender's interest in the Security Documents; (b) a repossession of the Property, or a final, nonappealable judgment has been entered foreclosing the Property, and the sale of the Property has been made and confirmed as required by law and the proceeds from such sale(s) disbursed to Lender and Reliance according to the terms hereof; or (c) the mutual written agreement of the parties to terminate this Agreement.

6. Enforcement. In any action brought to enforce or defend any of the provisions of this Agreement, the prevailing party or parties shall be entitled to recover its reasonable attorney's fees and expenses from any other party in addition to other relief awarded.

7. Construction. This Agreement does not make any party the employee, agent, partner or legal representative of any other party for any purpose whatsoever. No party is granted any right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of any other party.

8. Issuer/Borrower's Indemnity. Issuer/Borrower enters into this Agreement hereby agreeing to the arrangement between Lender and Reliance set forth herein in all respects. Furthermore, Issuer/Borrower does hereby agree to indemnify and hold harmless Reliance of and from any loss, expense, damages, costs, attorney's fees or other liability incurred as a result of this agreement and the transactions contemplated hereby, and does hereby release Reliance from any liability or duty to inquire as to the validity of the Note owing to Lender, the proper use of the proceeds of the Note or the adequacy of funding documentation.

9. Applicable Law. This Agreement is given under and shall in all respects be governed by the laws of the State of California with the exception that the laws of the Florida apply to the creation, attachment, perfection and collection upon the security interest in the Pledged Bonds.

10. Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be an original but all of which together shall constitute but one and the same instrument.

Book15334/Page619