UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

IGLESIA CRISTIANA LA NUEVA
JERUSALEM, INC.,                          Case No.: 8:12-bk-08724-KRM
                                          Chapter 11

     Debtor.

_____/

### DISCLOSURE STATEMENT
### FOR IGLESIA CRISTIANA LA NUEVA JERUSALEM, INC.'S
### PLAN OF REORGANIZATION

David W. Steen, Esq. (FBN 221546)
**DAVID W. STEEN, P.A.**
13902 North Dale Mabry Highway, Suite 110
Tampa, FL 33618
Telephone:     (813) 251-3000
Facsimile:     (813) 251-3100
E-Mail:        dwsteen@dsteenpa.com
Attorneys for Debtors

Tampa, Florida
August 17, 2012

I.    **INTRODUCTION**

**This is the Disclosure Statement** (the "Disclosure Statement") for the Chapter 11 case of IGLESIA CRISTIANA LA NUEVA JERUSALAEM, INC. (the "Debtor"). The Debtor filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on **June 4, 2012** (the "Petition Date"). This Disclosure Statement contains information about the Debtor and describes the **Chapter 11 Plan of Reorganization** (the "Plan") filed by the Debtor contemporaneously herewith. A full copy of the Plan is on file with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Court"), and is included with the ballot packet mailed to creditors, pursuant to Court order.

*Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions to General Unsecured Creditors under the Plan is discussed on page 7 of this Disclosure Statement. **General unsecured creditors are classified in Class 2.**

A.    **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

**Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.**

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This Section describes the procedures pursuant to which the Plan will or will not be confirmed.

If you want additional information about the Plan, you should contact David W. Steen, Esquire, David W. Steen, P. A. 13902 North Dale Mabry Highway, Suite 110, Tampa, Florida 33618, by mail or via email at: dwsteen@dsteenpa.com

### C.    Disclaimer

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.   The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has conditionally approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.   The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.*

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

Iglesia Cristiana La Nueva Jerusalem, the Debtor, consists primarily of a church and a school which provides education for children age two through 8th grade.  The church began in 1982.  The school began as a preschool in 1996 and has grown to serve approximately 140 students this school year.  The church and the school were at the same location at 3101 Kingsway Road, Seffner, until November 2004, at which time, due to the size of the congregation, the church moved to the location at 6616 Chelsea Street, Tampa.  The church continued to grow and reach a lever of 700 people in the congregation.  Thereafter, the economic downturn began to affect the church's income as it directly affected the income of its parishioners.  Shortly thereafter, in 2010, the church also suffered a split as one of its Associate Pastors became disassociated with the church.  The split caused a significant decrease in the number of parishioners.  At the same time, the school suffered from a reduction in enrollment die to the economic downturn.  Unfortunately, the school also had sizeable expenses, such as a new ventilation system at the cost of $20,000 in order to pass the air quality testing required by the Department of Education.  That expense occurred over the summer of 2010.  All of these circumstances contributed to the Debtor's inability to make its required mortgage payments and delayed other payments, as well, resulting in the filing of this bankruptcy case.

See Section D below for Events Leading to the Chapter 11 Filing.

### B.    Insiders of the Debtor

| Name | Title(s) |
|---|---|

Elvin Gonzalez, Senior Pastor/President
Miriam Martinez, Worship Pastor/Office Manager
Miriam D. Gonzalez, Administrator (School)
Rebecca G. Thorn, Financial Director (School)
Dayanara Valladares, Principal (School)

C.    **Management of the Debtor Before, During and After the Bankruptcy**

Elvin Gonzalez, Senior Pastor/President
Miriam Martinez, Worship Pastor/Office Manager
Miriam D. Gonzalez, Administrator (School)
Rebecca G. Thorn, Financial Director (School)
Dayanara Valladares, Principal (School)

D.    **Events Leading to Chapter 11 Filing**

The Debtor has filed its Chapter 11 case due to a reduction in the number of parishioners and a pending foreclosure on Debtor's real property as more specifically described in paragraph A above.

E.    **Significant Events During the Bankruptcy Case**

It is the belief of the Board and members for the Debtor that the sale or surrender of the property at 6616 Chelsea Street will be the key to the restructuring of the company and to its survival. The church has already relocated both its offices and the location of its bible studies and services to the school location. Due to relocation of the church to the school building, the company will save on (1) utilities (electric, water, telephone) approximate savings of $6,900 per month or $82,800 annually; (2) property insurance will be reduced by a substantial amount; and (3) landscaping and maintenance expenses of the Tampa building will no longer exist.

The church has also significantly reduced its payroll liability. The Worship Pastor/Office Manager is now working part-time at the church and also as a school teacher at NJCA, which will reduce her salary at the church by $21,000 annually. The Production Personnel has resigned his position and the position will not be replaced which results in a reduction of $9,360 in the annual payroll. Additionally, the school has increased its enrollment by 20% from the 2011-2012 to the current 2012-2013 school year. The Debtor will continue to seek and implement cost saving alternatives for its operations.

F.    **Projected Recovery of Avoidable Transfers**

To the best of the Debtor's current knowledge and information, the Debtor intends to pursue certain preference, fraudulent conveyance, or other avoidance actions.

However, the Debtor has not yet completed its investigation with regard to prepetition transactions. If a creditor received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer. Alternatively, the Debtor will assign such claims to a representative of the unsecured creditors who may pursue such actions, at the election of the unsecured creditors.

G.    **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed

for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H.  Current and Historical Financial Conditions

The identity and fair market value of the Debtor's estate's assets as of the Petition Date are listed in **the Debtor's schedules.**

## III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.  What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.  Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object, if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.  Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and its proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After Petition Date | As necessary to maintain operation of the business. | Paid pursuant to usual billing statements received on a monthly basis |
| Professional Fees, as approved by the Court. | $10,000.00 | Paid in full on the Effective Date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the Effective Date of the |

|  |  | Plan |
|---|---|---|
| Office of the U.S. Trustee Fees | $650.00 | Paid in full on the Effective Date of the Plan |
| TOTAL | $10,650.00 |  |

2.      Priority tax claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Code.  Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from confirmation.

The Debtor's total estimated tax liability is as follows:

Internal Revenue Service in the approximate amount of $7,459.54.

## C.      Classes of Claims and Equity Interests

The following are the **classes** set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**Priority Claims**: Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.  In the event there are priority claims, the allowed priority claims are impaired, and are entitled to vote on the Plan.

**Secured Claims**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim

The following chart lists all classes containing Debtor's secured prepetition claims and its proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|

| Class 1 | | No | Impaired | |
|---|---|---|---|---|
| Secured claim of:<br><br>**Reliance Trust Co.**<br><br>Estimated Claim on Petition Date:<br><br>$5,029,000.00<br><br>Estimated Allowed Secured Claim<br><br>Undetermined. | This claim is secured by a mortgage on real property located at 6616 E Chelsea Street, Tampa, Florida (Church) and 3101 Kingsway Road (School: NJCA Christian Academy). | | | The Debtor intends to sell or surrender the Church property. If the Church property is not sold by the date of confirmation, the property will be surrendered to the creditor in full satisfaction of its claim.<br><br>The Debtor intends to file a motion to value the (School) property in the amount of $1,850,000.00, or to reach an agreement with the creditor, and the secured portion of the (School) property will be amortized over thirty (30) years at five percent (5%) interest per annum and paid in two hundred forty (240) equal monthly payments with a balloon payment in the 241st month. |

    **3.**    **Classes of General Unsecured Claims:**  General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

    The following chart identifies the Plan's proposed treatment of Class 2, which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class 2 | General Unsecured Claims | Impaired | The Debtor shall pay the allowed Unsecured Creditors that are Non-Insiders their pro rata share of five (5) equal annual payments of $4,000.00. The first payment will be 120 days from a final Order Confirming this Plan. |
| Class 3 | Insiders' Interests and Claims (Unsecured) | Impaired | The Debtor shall pay the Unsecured Creditors that are Insiders their pro rata share of $4,000.00 per year for five (5) years with the first payment beginning six (6) years from a final Order confirming this Plan. |
| Class 4 | Equity Interest Holders | | The interests of shareholders shall have the same legal and equitable rights that they had at the time of the filing of the Chapter 11 Petition, and shall receive nothing for their interest. |

### D.    Means of Implementing the Plan

The Debtor will continue to operate the church and/or academy which will provide the Debtor with income to fund the Plan. The Debtor's Board and members will continue to seek and implement cost saving alternatives for its operations. Additionally, if a potential buyer is not identified, the Debtor will surrender the church (Chelsea Street) property to the creditor and restructure the loan on the school (Kingsway Road) property. The successful operation of the Debtor's business is essential to the reorganization of the Debtor. The Plan provides for payment to holders of allowed Claims, as set forth in this Plan, from the Debtor's available funds generated by the operation of the business.

### E.    Risk Factors

The proposed Plan has the following risks: The Debtor does not anticipate any risks for any of the creditors.

### F.    Executory Contracts and Unexpired Leases

The Plan, in Article VI, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article VI will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The Deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract is 30 days after entry of the Court order granting the Debtor's motion to reject the lease or contract.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Tax Consequences of Plan**

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.**

**No analysis of the Federal tax consequences of confirmation of the Plan has been made and you should consult with your own tax expert to determine what, if any, tax consequences may result from confirmation of the Debtor's Plan of Reorganization.**

IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §1129(a) or (b) of the Bankruptcy Code. The requirements include that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These are also additional requirements for confirmation of a Plan listed in § 1129.

A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Certain parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

**In this case, the Plan Proponent believes that the following classes are impaired:**

> **Class 1 – secured claims; and**
> **Class 2 - General Unsecured Claims.**
> **Class 3 – Claims of Insiders' Interests**
> **Class 4 – Equity Holders' Interests**

Holders of allowed claims in each of **the impaired classes listed above are entitled to vote** to accept or reject the Plan.

There are no unimpaired classes to have the right to vote to accept or reject the Plan.

Only a creditor or equity interest holder with an **allowed claim** or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim

or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, that creditor or equity interest holder cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case is August 20, 2012.** The Debtor shall have 60 days following entry of the Court's Order confirming the Debtor's Plan to file objections to claims, or such other deadline as the Court may set.

2.  As described above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is **impaired** under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.  The holders of the following five types of claims and equity interests are **not** entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expense claims.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.**

4.  A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.  Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below in Section B.2.

1.      A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds non-accepting classes is commonly referred to as a "cramdown" plan.  The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

### C.      Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.  Attached to this Disclosure Statement as **Exhibit "A"** is a chart of the maximum value of the material assets of the Debtor. The valuations are based upon the Debtor's best efforts, utilizing its experience purchasing equipment and inventory.  As all the assets of the Debtor are subject to liens and encumbrances, in a chapter 7 case, unsecured creditors would receive no distribution.   The Debtor's historical cash flow is attached hereto as **Exhibit "B"**. The projections are irrelevant to the risk of nonpayment to the general unsecured.

### D.      Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### B.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the reorganized Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## VI.    OTHER PLAN PROVISIONS

### General Provisions

**Revestment of Reorganized Debtor.**  On the Effective Date of the Plan, except as otherwise expressly provided in the Plan, the reorganized Debtor shall be revested with all of their assets free and clear of any and all liens, debts, obligations, claims, cure claims, liabilities, equity interests, and all other interests of every kind and nature (except for any permitted encumbrances), and the confirmation order shall so provide.

**Section 1146 Exemption**.  Pursuant to §1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan document, or the re-vesting, transfer, or sale of any real or personal property of, by, or in the Debtor or the reorganized Debtor pursuant to, in implementation of, or as contemplated by the Plan or any Plan document shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

**General Causes of Action.**  On the Effective Date, the Reorganized Debtor shall retain all causes of action, except to the extent a creditor or other third party has been specifically released from any cause of action that the estate may have by the terms of the Plan or by Bankruptcy Court order.  Neither a vote to accept the Plan by any creditor nor the entry of the confirmation order will result in the waiver or release of any of the estate's causes of action against such creditor.  Confirmation of the Plan and entry of the confirmation order are not intended to and shall not be deemed to have any *res judicata* or other effect which would preclude or inhibit prosecution of such causes of action following confirmation of the Plan, whether specified in this Plan or otherwise.

**Settlement of Causes of Action.**  The reorganized Debtor may settle any cause of action with the approval of the Bankruptcy Court.

**Adversary Proceeding(s).**  In the event that an adversary proceeding is filed by a creditor against the Debtor, such shall be deemed dismissed with prejudice on the effective date of the Plan, with each party to bear its own costs and attorney's fees in conjunction with such proceeding.  All issues and controversies shall be deemed fully settled and resolved upon confirmation, with each of such parties having fully released the Debtor from any and all claims and defenses whatsoever in conjunction with their claims, other than as specifically set forth in this Plan, or the order confirming the Plan.

**Dismissal of Lawsuits.**  All lawsuits filed against the Debtor shall be deemed dismissed with prejudice on the Effective Date, with each party to bear its own costs and attorney's fees in conjunction with such lawsuits.  All issues and controversies shall be deemed fully settled and resolved upon confirmation, with each of such parties having fully released each other from any and all claims and defenses whatsoever, other than as specifically set forth in this Plan, or the order confirming the Plan.

## II.    PROVISIONS GOVERNING DISTRIBUTIONS

**Distributions.**  Each holder of an allowed claim shall be paid as provided by this Plan; provided however, that if, on the Distribution Date, any disputed claims remain, then the reorganized Debtor shall withhold payment in respect of any disputed claim until a final order has been entered by the Bankruptcy Court resolving such disputed claim.

**Unclaimed Distributions.**

(a)    If the holder of an allowed claim fails to negotiate a check issued to such holder within ninety (90) days of the date such check was issued, then the reorganized Debtors shall provide written notice to such holder stating that unless such holder negotiates such check within thirty (30) days of the date of such notice, the amount of cash attributable to such check shall be deemed to be unclaimed, such holder's claim shall no longer be deemed to be allowed, and such holder shall be deemed to have no further claim in respect of such check and shall not participate in any further distributions under the Plan.

(b)    If a distribution pursuant to the Plan to any holder of an allowed claim is returned to the reorganized Debtor due to an incorrect or incomplete address for the holder of such allowed claim, and no claim is made to the reorganized Debtor as to such distribution within one hundred twenty (120) days of the return of such distribution, then the amount of cash attributable to such distribution shall be deemed to be unclaimed and such holder shall be deemed to have no further claim in respect of such distribution and shall not participate in any further distributions under the Plan.

**Transfer of Claim.** In the event that the holder of any claim shall transfer such claim on and after the Effective Date, it shall immediately advise the reorganized Debtor in writing of such transfer. The reorganized Debtor shall be entitled to assume that no transfer of any claim has been made by any holder unless and until the reorganized Debtor shall have received written notice to the contrary. Each transferee of any claim shall take such claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

**Determination of Claims.**

(a)   Following the effective date of the Plan and except as may otherwise be provided herein, the reorganized Debtor shall have standing to and may object to any administrative claim, priority claim, priority tax claim, secured claim, and unsecured claims. Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed claims and claims resulting from the rejection of executory contracts or unexpired leases, all objections to claims shall be filed with the Bankruptcy Court on or before sixty (60) days following the effective date (unless such period is extended by the Bankruptcy Court upon motion of the reorganized Debtor), and the confirmation order shall contain appropriate language to that effect.

(b) Disputed claims may be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. §157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated claim would cause undue delay in the administration of the reorganization case, such claim may be estimated by the Bankruptcy Court for purposes of allowance and distribution upon proper motion. Upon receipt of a timely-filed Proof of Claim, the Debtor or other party in interest may file a request for estimation along with its objection to the claim set forth therein. The determination of claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the claim for purposes of allowance and distribution. Procedures for specific estimation hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the disputed claim.

**De Minimis Distributions on Account of Allowed Unsecured Claims.** To avoid the disproportionate expense and inconvenience associated with making distributions in amounts of less than one dollar ($25.00) each with respect to allowed unsecured claims, the reorganized Debtors shall not be required to make, and shall be excused from making, distributions in amounts of less than $25.00 each to holders of allowed unsecured claims.

## VIII.   CONDITIONS PRECEDENT

**Condition Precedent to Confirmation of the Plan.** The Bankruptcy Court shall not enter the confirmation order, confirmation of the Plan shall not be effective, and the Debtor shall not be obligated to consummate the Plan, unless the Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the confirmation order

in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Debtor.

**Condition Precedent to Effective Date**. The Plan shall not be consummated and the effective date shall not occur until the Bankruptcy Court has entered the confirmation order, in form and substance satisfactory to the Debtor, on the docket of this case, and no stay of the confirmation order shall be in effect.

**Waiver of Conditions Precedent**. The Debtor and creditors may elect to waive any condition precedent set forth above that has not been satisfied on or before the date of the confirmation hearing.

## IX.   INJUNCTION, EXCULPATION AND RELEASE PROVISIONS

**General Injunction**. Pursuant to §§ 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the confirmation date, except as otherwise provided in the Plan or in the confirmation order, all persons or entities that have held, currently hold or may hold a claim or other debt or liability, that is discharged pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged claims, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the reorganized Debtor, or its respective properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the reorganized Debtors, or its assets; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the reorganized Debtor, or its assets; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to the Debtor or the reorganized Debtor; or (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the confirmation order. The Debtor and the reorganized Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

**Exculpation from Liability**. The Debtor, the reorganized Debtor, its respective directors, officers, employees, agents, representatives, accountants, attorneys, and professionals (acting in such capacity), and their respective heirs, executors, administrators, successors, and assigns, will neither have nor incur any liability whatsoever to any person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, any Plan document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the reorganization case. The rights granted herein are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the reorganized Debtor, and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

**Release.** To the extent permitted under the Bankruptcy Code, on the Effective Date of the Plan, the post confirmation Debtor shall be unconditionally and hereby is deemed to be unconditionally released from any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way relating to the Debtor, this reorganization case, any assets of the Debtor, the business or operations of the Debtor, the Plan, or any of the transactions contemplated thereby. The confirmation order shall enjoin the prosecution by any person or entity, whether directly, derivatively or otherwise, of any such claim, obligation, suit, judgment, damage, right, remedy, cause of action, charge, cost, debt, indebtedness, or liability which arose or accrued during such period or was or could have been asserted against any of the released parties, except as otherwise provided in the Plan, the Plan documents or the confirmation order. Each of the released parties shall have the right to independently seek enforcement of this release provision. This release provision is an integral part of the Plan and is essential to its implementation.

**Mutual Release.** In consideration of the payments and other things of value agreed to under the Plan, each creditor with an allowed claim hereby releases each other creditor from all claims, known or unknown, against each other in relation to the obligations, if any, among the creditors with allowed claims with respect to debts claimed in this proceeding to be owed to them by the Debtor.

**Term of Certain Injunctions and Automatic Stay.** All injunctions or automatic stays provided for in the reorganization case pursuant to §§ 105, 362, or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the effective date. Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the confirmation date and the final decree date, unless otherwise ordered by the Bankruptcy Court.

**Untimely Claims Provisions**

**No Liability for Tax Claims.** Unless a taxing governmental authority has asserted a claim against the Debtors before the bar date or administrative expense claims bar date established with respect to such claim, no claim of such governmental authority shall be allowed against the Debtor or the reorganized Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor, any of its affiliates, or any other person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**No Liability for Untimely Administrative Expense Claims.** Holders of administrative expense claims (including holders of any claims for post-petition federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the administrative expense claims bar date shall be forever barred from asserting such administrative expense claims against the Debtor, the reorganized Debtor, or any of its respective properties.

## X.   RETENTION OF JURISDICTION

**General Retention.**  Notwithstanding the entry of the confirmation order and the occurrence of the effective date, until the reorganization case is closed, the Bankruptcy Court shall retain the most full and extensive jurisdiction of the reorganization case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**Specific Purposes.**  In addition to the general retention of jurisdiction set forth in this Plan, after confirmation of the Plan and until the reorganization case is closed, the Bankruptcy Court shall retain jurisdiction of the reorganization case for the following specific purposes:

(a) to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any claim or equity interest, including the resolution of any application for an administrative expense, and to determine any and all objections to the allowance or priority of claims or equity interests;

(b) to determine any and all cases, controversies, suits or disputes arising under or relating to the Plan or the confirmation order (including regarding the effect of any release, discharge, or injunction provisions provided for herein or affected hereby and regarding whether conditions to the consummation and/or effective date of the Plan have been satisfied) and to enforce the obligations under the Plan;

(c) to determine any and all applications for allowance of compensation of professionals and reimbursement of expenses under §§330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the reorganization case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of professionals after confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtor or the reorganized Debtor;

(d) to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable (including assumed contracts), and to determine the allowance of any claims resulting from the rejection thereof or any amount necessary to cure defaults in any assumed and/or assigned executory contracts or unexpired leases (including assumed contracts), including cure claims;

(e) to determine any and all motions, applications, adversary proceedings, contested or litigated matters, causes of action, and any other matters involving the Debtor or the reorganized Debtor commenced in connection with, or arising during, the reorganization case and pending on the Effective Date, including approval of proposed settlements thereof;

(f) to enforce, interpret, and administer the terms and provisions of the Plan and the Plan documents;

(g) to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(h) to consider and act on the compromise and settlement of any claim against or equity interest in the Debtor or its estate;

(i) to assure the performance by the reorganized Debtor of its obligations to make distributions under the Plan;

(j) to correct any defect, cure any omission, reconcile any inconsistency, and make any other necessary change or modification in or to the Disclosure Statement, the Plan, the Plan documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the effective date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(k) to resolve any disputes concerning any release of a non-Debtor hereunder or the injunction against acts, employment of process, or actions against such non-Debtor arising hereunder;

(l) to enforce all orders, judgments, injunctions, and rulings entered in connection with this reorganization case;

(m) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement (if required),or the confirmation order, including the Plan documents;

(n) to review and approve any sale or transfer of assets or property by the Debtor or the reorganized Debtor, including prior to or after the date of the Plan, and determine all questions and disputes regarding such sales or transfers;

(o) to determine all questions and disputes regarding title to the assets of the Debtor, the estate, or the reorganized Debtor;

(p) to determine any motions or contested matters relating to the causes of action, whether brought before or after the effective date;

(q) to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the effective date or arising on account of transactions contemplated by the Plan;

(r) to resolve any determinations which may be requested by the Debtors or the reorganized Debtor of any unpaid or potential tax liability or any matters relating thereto under §505 and 1146(d) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the effective date;

(s) to issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with consummation, implementation or enforcement of the Plan or the confirmation order;

(t)    to enter and implement such orders as are necessary or appropriate if the confirmation order is for any reason modified, stayed, reversed, revoked, or vacated;

(u)    to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement (if required), the confirmation order, or the Plan documents;

(v)    to enter such orders as are necessary to implement and enforce the injunctions described herein;

(w)    to determine such other matters and for such other purposes as may be provided for in the confirmation order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(x)    to enter an order concluding and terminating the reorganization case.

**Closing of the Reorganization Case.** In addition to the retention of jurisdiction set forth above, the Bankruptcy Court shall retain jurisdiction of the reorganization case to enter an order reopening the reorganization case after it has been closed for purposes of entering a discharge.

## MISCELLANEOUS PROVISIONS

**No Admissions.** The Plan provides for the resolution, settlement and compromise of claims against and equity interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

**Revocation or Withdrawal of the Plan.** The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any claims by or against, or equity interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**Settlement of Claims.** The reorganized Debtor (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any claim or cause of action which the Debtor in possession had or had power to assert immediately prior to the confirmation date, and (b) may settle or adjust such claim or cause of action.

**Standard for Approval by the Bankruptcy Court.** In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 Debtor in possession.

**Further Assurances.** The Debtor or the reorganized Debtor (as the case may be) agrees and is authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

**Headings.** The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**Notices.** All notices, requests, or other documents in connection with or required to be served by the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

If to the Debtor or the Reorganized Debtor:

Iglesia Cristiana La Nueva Jerusalem, Inc.
PO Box 635
Seffner, FL 33583

with a mandatory copy to:

David W. Steen, Esq.
David W. Steen, P.A.
13902 North Dale Mabry Highway, Suite 110
Tampa, FL 33618

**Contemporaneous Service.** Copies of all notices under the Plan to any party shall be given to the Debtor and the reorganized Debtor and its counsel, contemporaneously with the giving of notice to such party.

**Changes of Address.** Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth above.

**Governing Law.** Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**Limitation of Allowance.** No attorneys' fees, punitive damages, penalties, special damages, lost profits, treble damages, exemplary damages, or interest shall be paid with respect to any claim or equity interest except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

**Estimated Claims.** To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claim be allowed in an amount greater than the estimated amount.

**Consent to Jurisdiction.** Upon any default under the Plan, the Debtor and the reorganized Debtor consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default. By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any cure claim, by voting on the Plan, or by entering an appearance in the

reorganization case, all creditors and other parties in interest, including foreign creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the reorganization case, including the matters and purposes set forth in this Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in this Plan.

**Setoffs.** Subject to the limitations provided in § 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any claim and the payments or other distributions to be made pursuant to the Plan in respect of such claim, claims of any nature whatsoever the Debtor may have against the holder of such claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtor may have against such holder.

**Successors and Assigns.** The rights, benefits, duties, and obligations of any person named or referred to in the Plan shall be binding upon and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such person.

**No Postpetition Interest.** Except as expressly stated in the Plan or otherwise allowed by a Final Order of the Bankruptcy Court, no holder of an allowed claim shall be entitled to the accrual of postpetition interest or the payment of postpetition interest, penalties, or late charges on account of such claim for any purpose.

**Modification of Payment Terms.** The reorganized Debtor reserves the right to modify the treatment of any allowed claim, as provided in § 1123(a)(4) of the Bankruptcy Code, at any time after the effective date, upon the consent of the holder of such allowed claim.

**Entire Agreement.** The Plan and Plan documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**Severability of Plan Provisions.** If, prior to confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The confirmation order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Confirmation Order and Plan Control.** To the extent the confirmation order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan, the Plan controls the Disclosure Statement and any such agreements, and the confirmation order (any and other orders of the Court) shall be construed together and consistent with the terms of the Plan.

**Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

\* \* \* \*

Respectfully submitted,

IGLESIACRISTIANA
LA NUEVA JERUSALEM, INC.,

By: _____
Elvin Gonzalez, as
its President

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Disclosure Statement

has been furnished by electronic and/or United States Mail to: United States Trustee, 501 E.

Polk Street, Suite 1200, Tampa, FL 33602; and Iglesia Cristiana La Nueva Jerusalem, Inc., P.O.

Box 635, Seffner, FL 33583, this 17th day of August, 2012.

DAVID W. STEEN. P. A.

*/s/ David W. Steen*
DAVID W. STEEN, ESQUIRE
FLORIDA BAR NO.: 221546
13902 North Dale Mabry Highway, Suite 110
Tampa, FL 33618
Telephone: (813) 251-3000
Facsimile: (813) 251-3100
E-Mail:    dwsteen@dsteenpa.com

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

IGLESIA CRISTIANA LA NUEVA
JERUSALEM, INC.,

Case No.: 8:12-bk-08724-KRM
Chapter 11

Debtor.

_____/

## LIQUIDATION ANALYSIS

| Real Property | Market Value | Liquidation | Liens |
|---|---|---|---|
| 6616 E. Chelsea Street | $3,000,000.00 | $2,000,000.00 | $5,000,029.00 |
| 3101 Kingsway Road | $1,850,000.00 | $1,400.000.00 | |
| **Furnishings & Equipment** | | | |
| Church | $ 91,884.50 | $ 60,182.00 | |
| Acedemy | $ 29.819.00 | $ 19,217.00 | |
| **Vehicles & Misc.** | $ 21,800.00 | $ 15,000.00 | |
| **TOTALS** | **$4,993,503.50** | **$3,494,399.00** | **$5,000,029.00** |

## LIABILITIES

| | |
|---|---|
| Administrative Claims | $ 10,650.00 |
| Secured Priority Claims | $ 50,702.17 |
| Secured Claim (Mortgages) | $5,029,000.00 |
| Unsecured (not including undersecured claim) | $ 76,033.30 |
| **TOTAL LIABILITIES** | **$5,137,675.47** |



Exhibit "A"

IGLESIA CRISTIANA LA NUEVA JERUSALEM
HISTORICAL CASH FLOW
CASE NO.: 8-12-bk-08724

| Income Source | May 16 - June 15 | June 16-July 15 | July 16-aug15 |
|---|---|---|---|
| Tuition | $ 11,911.65 | $ 38,068.61 | $ 16,956.70 |
| DayCare | $ 1,364.00 | | $ 810.00 |
| Fundraisers | $ 64.49 | | |
| Lunch | $ 157.72 | | $ 226.25 |
| Late Fees | $ 25.00 | $ 30.00 | $ 100.00 |
| Registration fees | $ 1,575.00 | $ 1,050.00 | $ 3,705.00 |
| Life Christian University | $ 480.00 | | |
| café | $ 530.68 | $ 637.60 | $ 345.61 |
| Graduation Fee | | $ 100.00 | $ 50.00 |
| Performing arts Fee | $ 1,250.00 | $ 2,600.00 | $ 1,200.00 |
| Testing Fees | $ 250.00 | $ 400.00 | $ 100.00 |
| Atheletic Fees | $ 250.00 | $ 450.00 | $ 175.00 |
| Summer Camp | $ 4,236.50 | $ 5,740.00 | $ 3,505.00 |
| Rent income | $ 1,800.00 | | |
| Book Fee | $ 8,875.00 | $ 2,800.00 | $ 3,000.00 |
| Bookstore | $ 464.00 | $ 1,316.03 | $ 542.93 |
| Tithes & offerings | $ 25,880.34 | $ 19,141.08 | $ 30,645.07 |
| uniforms | | $ 22.00 | $ 788.00 |
| Conference | $ 1,405.66 | $ 2,089.10 | $ 50.00 |
| Return check fee | | $ 35.00 | $ 35.00 |
| Total | $ 60,520.04 | $ 74,479.42 | $ 62,234.56 |

Exhibit "B"

| Expenses | | | | |
|---|---|---|---|---|
| Payroll | $ | 61,984.39 | $ | 29,875.10 | $ | 30,720.09 |
| Books | $ | 177.44 | $ | - | $ | - |
| Auto | $ | 268.08 | $ | - | |
| Bank Charges | $ | 555.06 | | | $ | 387.26 |
| Dues | $ | 10.00 | $ | 1,727.05 | $ | 671.30 |
| Postage | $ | 54.00 | $ | 27.00 | $ | 110.00 |
| Printing | $ | 706.42 | $ | 1,961.47 | $ | 98.97 |
| professional fees | $ | 11,405.00 | $ | 505.00 | $ | 620.24 |
| Conference expenses | $ | 200.00 | | | $ | 600.00 |
| Lunch / Cafeteria | $ | 102.33 | $ | 492.18 | | |
| Maintenance | | | | | | |
| Insurance | $ | 964.00 | $ | 519.15 | $ | 279.92 |
| Supplies | $ | 524.36 | $ | 2,242.32 | $ | 998.85 |
| Maintenance Contract | $ | 1,000.00 | $ | 500.18 | $ | 189.00 |
| Computer and software | | | $ | 1,000.00 | $ | 1,000.00 |
| Repairs and Maintenance (EQUIP) | | | $ | 600.00 | | |
| Alarm | | | $ | 150.00 | $ | - |
| Utilities | $ | 344.75 | $ | 1,067.03 | $ | 1,996.50 |
| Telephone | $ | 6,301.64 | $ | 14,286.69 | $ | 219.17 |
| Other Exp | $ | 736.82 | $ | 1,612.91 | $ | 8,960.80 |
| Radio Expenses | $ | 253.25 | $ | 395.09 | $ | 854.24 |
| Rental expense | $ | 2,010.95 | | | | |
| Outside services | $ | 292.00 | $ | 85.00 | | |
| Testing expense | | | $ | 560.74 | $ | 820.00 |
| Summer Camp Expenses | | | $ | 424.07 | $ | - |
| Evangelism & Special Events | | | $ | 248.12 | $ | 368.95 |
| uniform expense | | | | | $ | 449.02 |
| Mortgage Payment | | | $ | 990.00 | | |
| Credit Card payment | $ | 522.70 | $ | 20,000.00 | $ | 10,000.00 |

| | | |
|---|---|---|
| TOTAL | $ 88,413.19 | $ 79,269.10 | $ 59,344.31 |
| Difference | $ (27,893.15) | $ (4,789.68) | $ 2,890.25 |

**IGLESIA CRISTIANA LA NUEVA JERUSALEM**
**Projected Budget September - December 2012**
**Case No.: 8-12-bk-08724**

| Income Source | September | October | November | December |
|---|---|---|---|---|
| Tuition ** | $85,775.00 | $37,400.00 | $37,400.00 | $85,775.00 |
| DayCare | $4,000.00 | $5,000.00 | $3,000.00 | $2,000.00 |
| Fundraisers | $600.00 | $4,000.00 ＼ | $5,000.00 ＼ | $1,250.00 ＼ |
| Lunch program | $2,000.00 | $2,000.00 | $1,500.00 | $1,000.00 |
| Café | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Late Fees | $75.00 | $75.00 | $75.00 | $75.00 |
| Return Check fees | $35.00 | $35.00 | $35.00 | $35.00 |
| Performing arts Fee | $500.00 | $0.00 | $0.00 | $0.00 |
| Testing Fees | $100.00 | $0.00 | $0.00 | $0.00 |
| Atheletic Fees | $100.00 | $0.00 | $0.00 | $0.00 |
| Summer Camp | $0.00 | $0.00 | $0.00 | $0.00 |
| Graduation Fee | $50.00 | $0.00 | $0.00 | $0.00 |
| Book Fee | $700.00 | $300.00 | $300.00 | $0.00 |
| Uniforms | $100.00 | $50.00 | $100.00 | $100.00 |
| Bookstore | $500.00 | $500.00 | $750.00 | $500.00 |
| Life Christian University | $1,440.00 | $1,440.00 | $1,440.00 | $1,440.00 |
| Conferences | $500.00 | $500.00 | $500.00 | $500.00 |
| Tithes & Offerings | $20,000.00 | $22,000.00 | $26,000.00 | $22,000.00 |
| TOTAL INCOME | $117,475.00 | $74,300.00 | $77,100.00 | $115,675.00 |

** Tuition payments from scholarship SUFS are received only on September and December.

| Expenses | | | | |
|---|---|---|---|---|
| Payroll *** | 49,092.00 ✓ | 49,092.00 | 72,417.00 | 49,092.00 |
| Books | 9,000.00 | 300.00 | 300.00 | 350.00 |
| Advertising | 600.00 | 400.00 | 400.00 | 400.00 |
| Auto | 600.00 | 600.00 | 600.00 | 600.00 |
| Bank Charges | 700.00 | 500.00 | 500.00 | 500.00 |
| Dues | 1,000.00 | 3,000.00 | 1,000.00 | 1,000.00 |
| Evangelism & Special Events | 500.00 | 400.00 | 400.00 | 400.00 |
| Postage | 100.00 | 100.00 | 100.00 | 100.00 |
| Printing | 750.00 | 750.00 | 750.00 | 750.00 |
| professional fees | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Library | 200.00 | 200.00 | 200.00 | 200.00 |
| Lunch / Cafeteria | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Maintenance | 700.00 | 500.00 | 500.00 | 500.00 |
| Insurance | 3,000.00 ✓ | 3,000.00 | 3,000.00 | 3,000.00 |
| Supplies | 300.00 | 300.00 | 300.00 | 300.00 |
| Maintenance Contract | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Computer and software | 1,000.00 | 600.00 | 600.00 | 600.00 |
| Repairs and Maintenance (EQUIP) | 400.00 | 400.00 | 400.00 | 400.00 |
| Alarm | 175.00 | 175.00 | 175.00 | 175.00 |
| Utilities | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Telephone | 500.00 | 500.00 | 500.00 | 500.00 |
| Other Exp | 200.00 | 200.00 | 200.00 | 200.00 |
| Substitute | 300.00 | 300.00 | 300.00 | 300.00 |
| Radio Expenses | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 |
| TOTAL EXPENSES | 78,467.00 | 70,667.00 | 91,992.00 | 68,717.00 |
| | | | | |
| **Difference** | **39,008.00** | **3,633.00** | **-14,892.00** | **46,958.00** |

*** Three payroll periods in November

**IGLESIA CRISTIANA LA NUEVA JERUSALEM**
5 yrs. Projected Budget
Exhibit "C" To disclosure statement
Case No.: 8-12-bk-08724

| Income Source | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|
| Tuition & Fees | $ 540,000.00 | $ 550,000.00 | $ 575,000.00 | $ 600,000.00 | $ 625,000.00 |
| DayCare | $ 36,000.00 | $ 43,200.00 | $ 50,000.00 | $ 57,000.00 | $ 64,000.00 |
| Fundraisers | $ 15,000.00 | $ 17,000.00 | $ 19,000.00 | $ 20,000.00 | $ 21,000.00 |
| Lunch program | $ 20,000.00 | $ 21,000.00 | $ 22,000.00 | $ 23,000.00 | $ 24,000.00 |
| Café | $ 12,000.00 | $ 12,500.00 | $ 13,000.00 | $ 13,500.00 | $ 14,000.00 |
| Late Fees | $ 500.00 | $ 700.00 | $ 800.00 | $ 900.00 | $ 1,000.00 |
| Return Check fees | $ 200.00 | $ 250.00 | $ 300.00 | $ 350.00 | $ 400.00 |
| Summer Camp | $ 15,000.00 | $ 17,500.00 | $ 20,000.00 | $ 22,000.00 | $ 24,000.00 |
| Bookstore | $ 6,000.00 | $ 6,500.00 | $ 7,000.00 | $ 7,500.00 | $ 8,000.00 |
| Life Christian University | $ 12,000.00 | $ 14,000.00 | $ 16,000.00 | $ 18,000.00 | $ 20,000.00 |
| Conferences | $ 5,000.00 | $ 5,000.00 | $ 6,000.00 | $ 6,000.00 | $ 7,500.00 |
| Tithes & Offerings | $ 240,000.00 | $ 250,000.00 | $ 265,000.00 | $ 270,000.00 | $ 275,000.00 |
| **TOTAL INCOME** | $ 901,700.00 | $ 937,650.00 | $ 994,100.00 | $ 1,038,250.00 | $ 1,083,900.00 |

## Expenses

| | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|
| Payroll (2% increase per year) | $ 575,000.00 | $ 586,500.00 | $ 598,082.00 | $ 610,195.00 | $ 622,399.00 |
| Books | $ 12,000.00 | $ 13,000.00 | $ 14,000.00 | $ 15,000.00 | $ 16,000.00 |
| Advertising | $ 5,000.00 | $ 6,000.00 | $ 7,000.00 | $ 8,000.00 | $ 9,000.00 |
| Auto | $ 12,000.00 | $ 14,000.00 | $ 16,000.00 | $ 18,000.00 | $ 20,000.00 |
| Bank Charges | $ 1,500.00 | $ 2,000.00 | $ 2,500.00 | $ 3,000.00 | $ 3,500.00 |
| Dues | $ 12,000.00 | $ 13,000.00 | $ 14,000.00 | $ 15,000.00 | $ 16,000.00 |
| Evangelism & Special Events | $ 6,000.00 | $ 7,500.00 | $ 9,000.00 | $ 10,500.00 | $ 12,000.00 |
| Postage | $ 1,200.00 | $ 1,500.00 | $ 1,800.00 | $ 2,100.00 | $ 2,400.00 |
| Printing | $ 9,000.00 | $ 9,200.00 | $ 9,400.00 | $ 9,600.00 | $ 9,800.00 |
| professional fees | $ 12,000.00 | $ 12,500.00 | $ 13,000.00 | $ 13,500.00 | $ 14,000.00 |
| Library | $ 1,000.00 | $ 1,500.00 | $ 2,000.00 | $ 2,500.00 | $ 3,000.00 |
| Lunch / Cafeteria | $ 15,000.00 | $ 17,000.00 | $ 19,500.00 | $ 21,000.00 | $ 22,500.00 |
| Maintenance & Repairs | $ 12,000.00 | $ 13,000.00 | $ 15,000.00 | $ 16,500.00 | $ 18,000.00 |
| Insurance | $ 42,000.00 | $ 45,000.00 | $ 48,000.00 | $ 51,000.00 | $ 54,000.00 |
| Supplies | $ 3,500.00 | $ 4,000.00 | $ 4,500.00 | $ 5,000.00 | $ 5,500.00 |
| Maintenance Contract | $ 12,000.00 | $ 13,200.00 | $ 13,500.00 | $ 13,800.00 | $ 14,000.00 |
| Computer and software | $ 3,000.00 | $ 4,000.00 | $ 5,000.00 | $ 6,000.00 | $ 7,000.00 |
| Utilities & Telephone | $ 55,000.00 | $ 56,200.00 | $ 57,300.00 | $ 58,500.00 | $ 60,000.00 |
| Other Exp | $ 3,000.00 | $ 2,450.00 | $ 2,500.00 | $ 2,550.00 | $ 2,600.00 |
| Substitute | $ 3,000.00 | $ 3,300.00 | $ 3,600.00 | $ 3,900.00 | $ 4,200.00 |
| Radio Expenses | $ 25,000.00 | $ 30,000.00 | $ 35,000.00 | $ 40,000.00 | $ 45,000.00 |
| Missions | $ 6,000.00 | $ 7,500.00 | $ 9,000.00 | $ 10,500.00 | $ 12,000.00 |
| Mortgage | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 |
| Irs Payable | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 |
| Equipment | $ 30,000.00 | $ 35,000.00 | $ 40,000.00 | $ 45,000.00 | $ 45,000.00 |
| Unsecured claimes payables | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 |
| **TOTAL EXPENSES** | $ 820,200.00 | $ 855,350.00 | $ 890,682.00 | $ 925,645.00 | $ 960,899.00 |
| **Difference** | $ 81,500.00 | $ 82,300.00 | $ 103,418.00 | $ 112,605.00 | $ 123,001.00 |